DAVIS *v.* STATE OF INDIANA

[No. 30,915. Filed March 22, 1968.]

*Robert S. McCain,* of Fort Wayne, for appellant.

*John J. Dillon,* Attorney General, *Donald R. Ewers,* Assistant Attorney General, and *Duejean C. Garrett,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged, by indictment, filed in the Allen Circuit Court, March 25, 1965, with the crime of murder in the second degree.

The indictment, omitting formal parts and signatures, reads as follows, to-wit:

"The Grand Jury of the County of Allen, State of Indiana, upon their oath, do present that Robert Davis on the 6th day of March, 1965, in the County of Allen in the State of Indiana, unlawfully, feloniously, purposely and maliciously, but without premeditation, did kill and murder Clarence Miller, a human being, by then and there unlawfully, feloniously, purposely and maliciously, but without premeditation, shooting at and against the said Clarence Miller, with a certain .38 caliber revolver, loaded and charged with gunpowder and a bullet, and thereby mortally wounded the said Clarence Miller with said bullet, discharged and shot as aforesaid, from which mortal wound the said Clarence Miller then and there died, and so, the Grand Jurors, as aforesaid, upon their oath, as aforesaid, do say and charge that the said Robert Davis did then and there unlawfully, feloniously, purposely and maliciously but without premeditation, kill and murder the said Clarence Miller, in manner and form aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

May 17, 1965, appellant waived arraignment and pleaded not guilty to the charge embodied in the indictment. On the same day appellant waived his right to trial by jury.

Trial was had to the court, without the intervention of a jury, beginning July 28, 1965, and continuing through July 30, 1965. Following the trial, the court found the appellant, Robert Davis, guilty of the offense of murder in the second degree as charged in the indictment.

Thereafter, on August 26, 1965, appellant filed his motion for a new trial, such motion, omitting formal parts and signatures, in pertinent part reads as follows:

"Comes now the defendant in the above entitled cause and respectfully moves the court for a new trial thereon and in support of said motion alleges and says:

1. That the finding of the court is contrary to law.

2. That the finding of the court is not sustained by sufficient evidence.

3. That an error of law occurred at the trial, in this, that the court erred in sustaining objections by the State of Indiana to questions put to defendant by his counsel on re-direct examination, which questions, objections, ruling of the court and offer to prove are set out in full in an exhibit, which is attached hereto, made a part hereof and marked

Exhibit A.

WHEREFORE, the defendant prays the court for a new trial in said cause.

## EXHIBIT A

### EXCERPT FROM TESTIMONY OF ROBERT DAVIS
### ON JULY 30, 1965
### RE-DIRECT EXAMINATION

By Mr. Leas:

Q. You said something about your being scared?

A. I was scared.

Q. Do you have any condition of your body or organs or did you have at that time or since that time or before that time?

A. Yes

MR. HELMKE: Objection to the question. Just a minute. He said 'Do you have any condition of the organs' and I don't quite understand what the question is and whether it relates to physical health or mental health.

Q. Physical health. I'm asking if anything happens when he gets scared?

A. Yes, it does.

Q. What?

A. My heart.

Q. How long have you had a heart condition?

MR. HELMKE: Objection. This is medical testimony. He said he had a heart condition.

THE COURT: This is re-direct, Judge. I don't want to eliminate anything that might be important.

MR. LEAS: This is important because this was brought out on cross-examination that he was scared and I want to know about what his condition was at the time of this episode.

THE COURT: Will counsel come forward, please? (Conference at the bench between the Court and all attorneys)

MR. LEAS: Is there a question before the witness now? Question read by the reporter as follows: How long have you had a heart condition?

MR. HELMKE: And I objected. Is my objection shown?

MR. LEAS: Before the objection was taken may I make an offer to prove? I think that's the rule.

THE COURT: I think the Court rules and then you make your offer, is that not it, sir?

MR. LEAS: No, sir, I'm sorry, and I ask that we may make this offer to prove before the objection is taken.

THE COURT: All right.

MR. LEAS: After the objection is taken but before the Court rules, I think that's the rule, the defendant offers to prove at this time that he has had for two years a heart condition; that when he becomes excited and scared it affects his actions in that he breaks out into a sweat and his heart flutters and this defendant will testify that that happened at the time of this crisis.

MR. HELMKE: If the Court please, it's strictly self-serving. I suppose any one of us can say the same things when we become excited and scared our heart skips a beat or two. There has been no testimony by a doctor that attended Mr. Davis to this effect. This was not brought out on direct examination and it is not relevant to the issue at hand.

THE COURT: The objection is sustained."

On August 26, 1965, appellant also filed a Petition for a Writ of Error Coram Nobis along with his motion for a new trial. Such petition reads in pertinent part as follows:

"Comes now the defendant, Robert Davis, and files his petition for a writ of error coram nobis and in support of his petition alleges and says:

1. That on the 6th day of March, 1965, at about 10 o'clock a.m. petitioner was apprehended and placed in custody by officers from the Fort Wayne Police Department, Fort Wayne, Indiana.

2. That at that time said officers knew or should have known that this investigation had been narrowed to, and in effect focused upon, this petitioner.

3. That at that time said officers commenced questioning petitioner regarding the facts of a certain alleged commission of a crime, namely homicide, with the sole and expressed purpose of eliciting a confession and statement from petitioner.

4. That during the time of the oral interrogation of petitioner, said petitioner did not have an attorney and did not make a request for same for the following reasons:

    (a) Petitioner did not know the name of any attorney at law and did not know who he could call, contact or notify.

    (b) Petitioner did not have funds available at that time to pay an attorney.

    (c) Petitioner did not know he had any right whatsoever to have an attorney represent and advise him.

5. That the officer did not advise petitioner at any stage of the investigation, interrogation or preliminary procedures of his right to an attorney, his right to remain silent or of the fact that his statements, being then verbal and later written, could be used against him to convict him of murder in the second degree, or, finally, that upon conviction he could be sentenced to life imprisonment in the Indiana State Prison.

6. That immediately after interrogation of petitioner by said officers, a typed statement was furnished and delivered to petitioner and he was requested to sign same; further, that he did in fact sign said statement which was admitted in evidence during the trial of the cause.

7. That during the time of the examination and signing of said written statement, petitioner did not have an attorney and did not make a request for same for the following reasons:

    (a) Petitioner did not know the name of any attorney at law and did not know who he could call, contact or notify.

    (b) Petitioner did not have funds available at that time to pay an attorney.

    (c) Petitioner did not know he had any right whatsoever to have an attorney represent and advise him.

8. That petitioner has never been convicted of a crime before the conviction in the above entitled cause and therefore had had no experience in dealing with criminal law matters; further, that petitioner is semi-literate in that he has obtained a fourth-grade education only and is not familiar with his constitutional rights and privileges or matters of general knowledge in his particular field.

9. That thereafter, on 11th day of March, 1965, Gordon Franke, M.D., Allen County Coroner, visited the Allen County Jail in the company of a stenographer and interrogated petitioner and during the course of said interrogation required said stenographer to take speed notes and thereafter type said notes into a statement and requested petitioner to sign same which petitioner did. That on said date and at said time, there was a statute in full force and effect, which statute is set out in full hereinbelow.

'WITNESSES—SUBPOENAS—POST MORTEM

All persons desirous of being heard shall be examined as witnesses; and the coroner may cause witnesses to be summoned by subpoena, issued by him, and served by a constable, who shall answer all questions asked them, on oath, touching such death. When a surgeon or physician is required to attend such inquest and make a post mortem examination, the coroner shall certify such service to the Board of County Commissioners, who shall order the same paid out of the County Treasury.' (2 RS 1852, Ch. 7, Section 8, p. 13.)

10. That said Allen County Coroner violated the petitioner's statutory rights in that the above cited statute was not complied with in any respect by said coroner.

11. That at the time of said coroner's interrogation, petitioner did not have an attorney and did not make a request for same for the following reasons:

(a) Petitioner did not know the name of any attorney at law and did not know who he could call, contact or notify.

(b) Petitioner did not have funds available at that time to pay an attorney.

(c) Petitioner did not know he had any right whatsoever to have an attorney represent and advise him.

12. That the Allen County Coroner did not advise petitioner at any stage of the investigation, interrogation or

preliminary procedure of his right to an attorney, his right to remain silent or of the fact that his statements, verbal and/or written, could be used against him to convict him of murder in the second degree, or, finally, that upon conviction he could be sentenced to life imprisonment in the Indiana State Prison. That petitioner employed Fay Leas and Robert Hines, Attorneys at Law, Allen County, Indiana, on Saturday, the 13th day of March, 1965; further, that they were not advised by said Allen County Coroner that any inquest, formal or informal, or any interrogation was to occur or that said Coroner was going to take any statement from petitioner; further, that neither attorney has ever been advised of this fact by any officer of the court or law enforcement officer as of this date.

WHEREFORE, petitioner prays that this court grant his petition for a writ of error coram nobis for the reason that petitioner was deprived of the constitutional right of counsel during interrogation by police officers at the time of his arrest during the time petitioner gave said police officers a written statement and during interrogation by the Coroner of Allen County, Indiana, and at the time petitioner gave said Allen County Coroner a written statement, and for all other proper relief.

/s/ Robert Davis

STATE OF INDIANA ⎱ SS:
COUNTY OF ALLEN ⎰

Before me, the undersigned, a notary public in and for said County and State this 26th day of August, 1965, personally appeared Robert Davis and acknowledged the execution of the above and foregoing petition for Writ of Error Coram Nobis.

IN WITNESS WHEREOF I have hereunto subscribed my name and fixed my official seal.

/s/ Robert S. McCain
Robert S. McCain, Notary Public

My Commission expires June 23, 1968."

Appellant's Petition for Writ of Error Coram Nobis was set for hearing on October 28, 1965. On that date some evidence was submitted to the court, but prior to completion of same, appellee objected to the evidence and hearing on the petition. The court sustained the objection. Thereupon the appellant made an offer to prove. The court after hearing

argument on the objections sustained appellee's objection and denied the petition.

On December 1, 1965, judgment was rendered on the court's finding. Such judgment, in pertinent part, reads as follows:

> "It is, therefore, ordered, adjudged and decreed by the Court that the defendant, Robert Davis, is guilty of the offense of Second Degree Murder, as charged in the indictment, and that he be and he is hereby committed to the custody and control of the Warden of the Indiana State Prison during his life, and that he pay and satisfy the costs herein taxed."

Appellant's Assignment of Errors reads in pertinent part as follows:

> 'The appellant avers that there is manifest error in the judgment and proceedings in this case, which is prejudicial to appellant, in this:
>
> The Court erred in overruling the appellant's motion for a new trial;
>
> The Court erred in overruling appellant's petition for Writ of Error Coram Nobis (Belated Motion for New Trial).
>
> The Court erred in overruling appellant's written request for hearing on his petition for Writ of Error Coram Nobis (Belated Motion for New Trial)."

Said Assignment of Errors together with transcript was filed in the office of the Clerk of this Court on April 21, 1966.

The evidence most favorable to the State shows that shortly after 3:00 a.m. on March 6, 1965, appellant went to a house at 418 Lasselle Street in Fort Wayne where a crap game was in progress. Appellent had been at the house for a while when he made a $3.00 bet with Clarence Miller. Appellant won the bet, but Miller refused to pay. Appellant and Miller later got into an argument over a $10.00 bet which Miller claimed appellant owed him. Eddie "Crip" Thurmond, who was operating the game, explained to Miller that appellant had not bet with him, but Miller continued to argue. Finally Thurmond gave Miller $10.00 and told him not to

cause any trouble. When he threatened appellant, several men took Miller outside. Appellant got a pistol from the trunk of his car, loaded it with bullets he had in the glove compartment and returned to the game. Miller later came back into the house and told Thurmond he did not want the money from him. He wanted it from appellant. He said he was going to kill appellant if he did not get it. Then Miller put one of his hands in his pocket. He shook his finger at appellant and used vile language. When Miller took a step toward appellant, appellant started shooting and emptied his gun. After all the trouble was over Miller was found outside lying about twelve feet from the house. Miller was taken to Parkview Hospital where he was pronounced dead.

Appellant first asserts his assignment of error that the trial court erred in overruling his petition for writ of error coram nobis. If we are to consider the pleading in question as a petition for writ of error coram nobis, as appellant denominated it, it is defective in that it is not verified as required by Acts 1947, ch. 189, § 6, p. 625, being § 9-3306 Burns' 1956 Repl. The pleading is acknowledged, not vertified. If the pleading is considered as an affidavit in aid of appellant's motion for a new trial, it is also defective because it is not verified.

Appellant next asserts his assignment of error that the trial court erred in overruling his request for a hearing on his petition for writ of error coram nobis. Since the petition was not verified, the overruling of appellant's request did not constitute error.

Appellant finally asserts his assignment of error that the trial court erred in overruling his petition for new trial. In essence he contends the State failed to prove appellant had intent to kill the decedent. He argues that the State's position is that appellant formed intent when he went to his automobile to pick up his gun. He further argues that the only evidence which supports the State's position is the statement he gave the police when he was arrested,

but that the overwhelming evidence shows that appellant had the gun with him when he entered the house and that he never left the house until after the shooting. Appellant is attempting to have us weigh the evidence. The trial court had the responsibility of weighing the evidence and determining the credibility of witnesses. We will not presume to substitute our judgment for that of the trial court so long as there is evidence of probative value to sustain its verdict. *Prewitt* v. *State* (1964), 245 Ind. 197, 197 N. E. 2d 302; *Myers* v. *State* (1960), 240 Ind. 641, 168 N. E. 2d 220.

If the trial court saw fit to believe the statement appellant made to the investigating officers or to believe part of it and part of the evidence adduced from other witnesses, it had the right to do so.

There is some conflict in the evidence relative to the firing of shots by appellant at decedent after he left the room. That again is the province of the trial court to determine. The evidence is undisputed that appellant emptied his gun. At least some of the shots were directed at the decedent in the house. Whether he fired at the decedent outside was for the trial court to determine.

We find no reversible error. The judgment is affirmed.

Lewis, C. J. and Arterburn, Hunter and Mote, JJ. concur.

NOTE.—Reported in 234 N. E. 2d 853.