## NEW *v*. STATE OF INDIANA.

[No. 968S152. Filed June 19, 1970. No petition for rehearing filed.]

*Lawrence D. Renfro, George W. Hand, Scotten & Hinshaw,* of counsel, all of New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *Murray West,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for Second Degree Murder. Appellant herein was adjudged by jury in the Henry County Circuit Court and sentenced according to the statutory provisions.

A fair statement of the evidentiary facts indicates the following:

On the night of January 24, 1968, at approximately 11:45 p.m., the appellant and the deceased left work at the Chrysler Plant in New Castle, Indiana. They drove in deceased's car to the home of the appellant's grandmother where appellant picked up four beers which he had hidden on the back porch. After aimlessly driving around for awhile they drove to Knightstown to pickup the deceased's wife. After agreeing that the deceased and his wife would spend the night with the appellant in Lewisville, they drove to appellant's stepfather's home where appellant got a partially filled bottle of whiskey. They then proceeded to Lewisville where the incident took place at the home of appellant's father, who was then in Florida. Appellant and deceased consumed the remaining portion of the whiskey as well as a six pack of beer which they had brought from Knightstown. Appellant then wanted the deceased to take him to a tavern to get more to drink. The deceased refused because it was after 2:00 a.m. and all taverns were closed. An argument ensued and testimony conflicts as to whether or not deceased actually struck or slapped the appellant. In any event, deceased and his wife left the house and were getting in their car parked directly in front of the house when the appellant obtained a 20 gauge shotgun, loaded it and stepped onto the front porch. Appellant called to the deceased who was then standing on the sidewalk in front of the house. After a short verbal exchange, the appellant fired the gun killing the deceased.

Appellant was indicted for Second Degree Murder and trial by jury was held in April, 1965. Appellant was adjudged guilty and sentenced to life imprisonment.

## I.

Appellant's first allegation of error is that the trial court erred in admitting into evidence State's exhibit #4, a photograph of the deceased taken at the Henry County Hospital Morgue. Appellant contents that the photograph did not tend to prove or disprove any of the issues in this cause of

action and only served to inflame the passions of the jury. This allegation of error is without merit.

The admission into evidence of a photograph is within the sound discretion of the trial court and the court's action therein will not be disturbed except for an abuse of such discretion. *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860. No such abuse is shown here.

In determining the relevancy of a photograph the court will inquire as to whether or not a witness would be permitted to describe the objects photographed. In *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79, photographs of the decomposed body of the deceased were held admissible on the grounds that the facts shown in the photographs had been described without objection and that the photographs served to supplement the oral testimony. In holding the photographs admissible the Court said:

> "A photograph, proved to be a true representation of the person, place or thing which it purports to represent, is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description." 219 Ind. at 127.

In the case at hand, the photograph was similarly admitted. It was offered into evidence in support of the testimony of the Henry County Coroner. This testimony was concerned with the nature and extent of the wounds which caused the death of the deceased. Such testimony was relevant and competent and taken without objection. The photograph, being a graphic portrayal of the testimony, was properly admitted.

The leading Indiana case on the admission of photographs is *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899. In that case, a total of six photographs of the body of the deceased were admitted into evidence. Appellant objected to the admission of five of the photographs, exhibits 10, 11, 12, 13 and 14. The Court in holding that three of those, exhibits 10, 11 and 12 had been properly admitted, said:

"Even though these photographs representing Exhibits Nos. 10, 11 and 12 may have been, to some degree, repetitious and cumulative, and are gruesome in character, they serve to elucidate and explain relevant oral testimony given at the trial and they were properly admitted for the purpose of showing fully the scene of the crime, the nature of the wounds of the victim, and the condition of the basement immediately after the crime was committed." 239 . Ind. at 108.

State's exhibits 13 and 14 were photographs of the deceased's body taken at the Morgue at the time the autopsy was performed. State's exhibit 13 showed the hands and instruments of the doctor inside the deceased's chest. State's exhibit 14 showed additional incisions made by the doctor during the autopsy. The court in holding that these two photographs had not been properly admitted said:

"These exhibits were not in anyway necessary to establish the corpus delicti. They did not show the position of the parties to the crime nor correctly show the wounds of the victim or the cause of her death. They did not 'shed any light on any issue' or enlighten the jury on any fact in issue, but served only to arouse passion and prejudice.

"These exhibits were calculated to, and in our opinion did, only incite sympathy for the woman who lost her life and indignation against the appellant herein. They were unnecessary and were introduced only for the purpose of inflaming the jury's emotions." 239 Ind. at 117.

We do not believe that State's exhibit 4, the photograph in the present case, can be similarly classified. This photograph portrays the body of the deceased victim in the Morgue. The body is lying face up, and is nude from the waist up. The left arm is being held up by an unidentified person in order to make the wounds to the underside of the left upperarm and left side of the body visible. The body had not been subjected to an autopsy or otherwise altered. This photograph was the only photograph which was offered to show the nature and extent of the deceased's wounds and accurately portrayed them. The photograph served to elucidate the

testimony of the coroner concerning the wounds. State's exhibit 4 was properly admitted.

## II.

Appellant's next allegation of error is that the trial court erred in permitting State's witness, Sgt. Petro, to testify that in his opinion the appellant was not intoxicated. This testimony was properly admitted. The rule in Indiana permits a non-expert witness to give testimony as to whether or not in his opinion a defendant was intoxicated. *Johnson* v. *State* (1929), 201 Ind. 264, 167 N. E. 531. The witness testified that the appellant was capable of conducting a rational conversation, his speech was not slurred, appeared normal and exhibited no abnormal behavior. On the basis of these functional observations the witness stated in his opinion that the appellant was not intoxicated. This is in accordance with the accepted manner of making such proof. *Railway Express Agency, Inc.* v. *Bonnell* (1941), 218 Ind. 607, 34 N. E. 2d 927. The determination of whether or not the degree of intoxication was such as to prevent the appellant from forming specific intent is a question of fact to be determined by the trier of facts. *Mattingly* v. *State* (1957), 236 Ind. 632, 142 N. E. 2d 607. However, the testimony of this witness that, based on his observations, in his opinion the appellant was not intoxicated did not invade the province of the jury and was properly admitted.

## III.

Appellant next alleges that the trial court erred in permitting Sgt. Petro to testify over appellant's objection as to statements made by the defendant at a time when defendant was not adequately advised of his constitutional rights and was so intoxicated as to render himself incapable of waiving those rights and making a voluntary statement.

The testimony in question can be segregated into two parts. First, is that testimony regarding the statements made by the defendant at the scene of the crime.

The uncontraverted evidence is that the appellant was arrested at the scene of the crime for public intoxication. This arrest was made subsequent to appellant's voluntary and spontaneous statements made to officers on the scene. After arrest appellant was placed in the back seat of the police cruiser. At that point Sgt. Petro arrived on the scene and asked the appellant his name. The appellant began to recite an account of the incidents of the evening. This testimony was objected to at trial. The trial court overruled the objection and the overruling of that objection is now alleged as error.

Sgt. Petro attempted to interrupt appellant in order that he could advise him of his constitutional rights before any attempt to interrogate the appellant would take place. Appellant would not permit Sgt. Petro the opportunity to speak long enough to give the "Miranda warnings." The most that Sgt. Petro could say was that "anything you say may be used against you." Appellant's refusal to let Sgt. Petro speak prevented any further warnings.

Appellant now contends that testimony regarding statements made to Sgt. Petro by the appellant at the scene of the crime were improperly admitted at trial. At trial, appellant objected to this testimony on the grounds that he was inadequately advised of his rights to remain silent and right to counsel and that because he was under the influence of alcohol he was not capable of giving an accurate statement. This objection was overruled, the court holding that the statements were voluntary and not in response to interrogation, therefore, not subject to the Miranda requirements of warning and waiver.

The trial court correctly admitted this testimony. The requirements of warning and waiver imposed by *Miranda* v.

*Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. ■ 2d 694, apply only to custodial interrogation. The statements made to Sgt. Petro while appellant was admittedly in custody, were not made in response to any interrogation. These statements were freely, voluntarily and spontaneously given by the appellant. Such statements are admissible in evidence. In *Miranda* v. *Arizona, supra,* the court said:

> "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U. S. at 478.

The police officer in this instance did not attempt to circumvent the constitutional rights of the appellant. There was no attempt to interrogate the appellant at this point. Officer Petro was obviously aware of the constitutional rights of the appellant and made a good faith effort to advise the appellant of those rights. Appellant cannot now contend that his constitutional rights were violated because he refused to heed or listen to the officer's attempts to advise him of his rights and continued to make voluntary and spontaneous statements which were later introduced into evidence against him.

We would also emphasize that the statements referred to in this instance were made at the scene of the crime and contemporaneous to the arrest. These statements were not made after appellant had been in custody for any appreciable length of time nor were they made in the inherently coercive atmosphere of the stationhouse. Either of those two situations might easily cast great doubt on their spontanuity and voluntariness but such is not the case here.

The second segment of Sgt. Petro's testimony which appellant contends was erroneously admitted is testimony regarding appellant's statements made to Sgt. Petro at the

Henry County Jail. These statements constituted a recitation of the appellant's recollection of the entire night's events including the killing itself, the events which led to it, and the events directly subsequent. The statements were made directly after Sgt. Petro had read the following "Miranda warning" to the appellant:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish one. Do you understand each of these rights I have explained to you? Having these rights in mind do you wish to talk to us now?"

Thereupon the appellant made the statements which he now alleges were erroneously admitted.

At trial, appellant objected to the testimony on the grounds that he "was not competent to waive his constitutional rights for the reason that he was under the influence of intoxicating beverages." The trial court sustained the objection as follows:

"I don't think it's up to the defendant to show incompetancy. I think it's up to the State to show competency. Objection sustained."

Thereafter ensued a question and answer dialogue between the prosecution and the State's witness Sgt. Petro, designed to give evidence of the appellant's competency. At the conclusion of this dialogue, the witness was again asked to relate what the appellant had told him. Sgt. Petro then testified, without objection, as to the entire story which appellant had related to him at the jail. This evidence being admitted without objection at the trial cannot now be reviewed on appeal as alleged error. *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815; *Sams* v. *State* (1969), 251 Ind. 571, 243 N. E. 2d 879.

The trial court had correctly sustained appellant's original

objection and placed a burden on the State to show that the appellant was competent to waive his constitutional rights at the time he made the statement to Sgt. Petro.

However, we hold that once the State had offered evidence which would tend to show that competency and then offered the evidence of appellant's statements again, it was incumbent upon appellant to make timely objection to such evidence and obtain a court ruling as to whether or not the State had sustained its burden of proving competency. In the absence of such objection we must assume that the State had sustained the burden and that the evidence was properly admitted. In any event the failure to make timely objection waives the alleged error. *Sams* v. *State, supra.*

## IV.

Appellant next alleges that the trial court erred in admitting in evidence the written confession signed by the appellant on the grounds that the appellant was so intoxicated as to render himself incapable of waiving his constitutional rights.

The above discussion in which we have determined that the State carried its burden of showing that the appellant was not so intoxicated as to be incompetent to waive his rights, disposes of this issue and the trial court did not err in admitting this statement in evidence.

## V.

The appellant next alleges that the trial court erred in refusing to give appellant's tendered instruction #1 which purported to instruct the jury regarding the issue of self-defense. The trial court did, however, give three of its instructions, 27, 28 and 29 which correctly state the law in Indiana on this issue. It is not necessary here for this Court to pass on the correctness of the appellant's tendered instruction. Suffice it to say that the failure to give a tendered instruction cannot be reversible error where such

instruction was adequately covered by other instructions. *Cockrum* v. *State* (1968), 250 Ind. 366, 234 N. E. 2d 479.

Appellant also alleges that the trial court erred in refusing to give appellant's tendered instructions 3 and 4. These tendered instructions purport to instruct the jury that the killing if done in a sudden heat or passion, sufficiently provoked and without malice, would not be second degree murder but rather would be voluntary manslaughter. Here again, these instructions are adequately covered by the court's own final instructions 23, 24 and 25, and the appellant's own tendered instruction 2 which became court's final instruction 22½ and which reads as follows:

"Voluntary manslaughter is the killing of another unlawfully and voluntarily without malice, express or implied and without premeditation, upon a sudden heat, caused by sufficient provocation upon the part of the one killed. The law does not recognize the use of words alone as sufficient provocation to reduce the offense from murder to manslaughter, the other essential elements of the crime of murder being present.

"Before provocation would be sufficient, the person killed must be doing some act which at the time is of such a character that so inflames the mind and excites sudden and angry passions of the one who does the killing, that he does not act with deliberation, but that his mind is in a heat of passion whereby he is incapable of deliberating.

"If death though wilfully intended, appears to have been inflicted immediately after provocation deemed by the law adequate to excite sudden and angry passions, this fact rebuts the presumption of malice. But the killing is still unlawful, because a man is bound to curb his passions and the offense, if all other essential elements exist, is voluntary manslaughter."

The appellant's tendered instructions 3 and 4 are more than adequately covered by the court's final instructions 22½, 23, 24 and 25.

It is, therefore, not reversible error for the trial court to refuse to give those instructions.

## VI.

Appellant next alleges that the trial court erred in over-ruling appellant's motion for directed verdict filed at close of plaintiff's evidence and similar motion filed at the close of all the evidence. He further alleges that the verdict of the jury is not sustained by sufficient evidence and the verdict is contrary to law. These four specifications of error will be dealt with singularly here in that they are all premised on the basic allegations, namely, that the evidence failed to show malicious intent on the part of the appellant and that the evidence did show that the appellant was incapable of forming malicious intent by virtue of his intoxication and his in-flamed state of mind due to a sudden heat or passion resulting from an assault on the appellant by the deceased.

This Court, on appeal from judgment of conviction, has the duty to consider but not weigh the evidence and to determine if there is any substantial evidence of probative value from which the jury could have reasonably inferred that the appellant was guilty of the offense charged. *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465.

The record herein is replete with evidence from which the jury might reasonably infer malicious intent. The intentional use of a deadly weapon against an unarmed person in a manner likely to produce death is sufficient evidence for jury to conclude malice existed within second-degree murder statute. *Helms* v. *State* (1968), 251 Ind. 335, 241 N. E. 2d 244; *Emery* v. *State* (1968), 250 Ind. 500, 236 N. E. 2d 28.

The record shows that the following statements were made by the appellant subsequent to the killing:

> "I knew if I shot him outside they'd get me for murder. If you shoot somebody inside your own house they can't get you for murder."
>
> "God damn, I was mad. I was so mad."
>
> "I wanted him to come on my porch then they couldn't

get me for murder, could they? I wanted to shoot him, God damn, I was mad. Nobody was going to treat me like this."

State witness Sgt. Robert L. Padgett testified that the appellant told him that the deceased "just looked over his shoulder and didn't do what he told him to and I shot him, God damn him."

The wife of the deceased, an eyewitness to the killing, testified as follows:

". . . Then I looked at Mike (the appellant) and he was just grinning, he was just laughing, and I told him, I kept beggin' him not to shoot. He said I hate to do this and he just shot him. . . ."

The above testimonial evidence is but a portion of the evidence from which the jury might reasonably infer malicious intent. There being sufficient evidence of probative value to support the jury determination of purpose and malice, the verdict of the trial court will not be disturbed.

The appellant also contends that he was incapable of forming the necessary malicious intent by virtue of his intoxication and his inflamed state of mind being seized with a sudden heat or passion resulting from an assault on the appellant by the deceased. This contention is without merit. The question of malice is one of fact for the jury to decide. *Emery* v. *State, supra.* The evidence shows that the appellant was to some degree intoxicated at the time of the killing. As a rule voluntary intoxication is not a defense in a criminal proceeding. It is only where intoxication has occurred to an extent that the person is mentally incompetent so that he cannot form specific intent, where the crime charged involves a specific intent, that intoxication can be a defense. *Davis* v. *State* (1968), 250 Ind. 54, 232 N. E. 2d 867.

The question of whether or not the degree of intoxication was such as to prevent the appellant from forming a specific intent was question of fact for the trier of facts. *Mattingly* v. *State, supra.* In this instance the evidence as to appellant's state of intoxication was such as the trier of facts might rea-

sonably determine that the capacity to form malicious intent did in fact exist. This Court does not now reweigh that evidence but merely determines that reasonable inferences can be drawn from that evidence which supports the finding of the jury.

Judgment of the trial court is affirmed.

Hunter, C.J., Arterburn and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 259 N. E. 2d 696.