NOEL, ET AL. *v.* STATE OF INDIANA.

[No. 1170S268. Filed October 26, 1971.]

*Harry L. Zerbe,* of Lawrenceburg, for appellants.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from a conviction of theft. Appellants, James Rogers, James Noel, Edward Gafford and Ronald Knust, were charged by affidavit with Committing or Attempting to Commit a Crime While Armed With a Deadly Weapon pursuant to Ind. Ann. Stat. § 10-4709 [1970 Supp.]. Appellants were tried together, trial being to a jury, and upon conviction of the lesser included offense, each received a sentence of one (1) to ten (10) years.

The first question presented to this Court is whether theft is an included offense of the crime of Commission of a Crime While Armed With a Deadly Weapon. The charge of theft was clearly set out in the affidavit and it was also present in the statute. This Court has previously held that robbery is an included offense of the aforementioned crime. See, *Taylor* v. *State* (1968), 251 Ind. 236, 236 N. E. 2d 825. We are also of the opinion that theft is an included offense. Every element of the crime of theft is present in the crime of commission of theft while armed, and, as stated above, the crime of theft was clearly set out in the charging affidavit.

A more serious question presented to this Court involves alleged violations of appellants' constitutional rights. Appellants contend that certain evidence was obtained and admitted into evidence in violation of *Miranda* v. *Arizona* (1966), 384 U. S. 436.

The events which led to the arrest and conviction of appellants are as follows: Early on the morning of November 3, 1967, Officer William McCartney of the Aurora, Indiana, Police Department, while on routine patrol, noticed some suspicious activity behind the Randall Implement Company which is adjacent to U. S. Highway 50 at the edge of the city. Officer McCartney observed two subjects running from a Hertz rental truck which had been backed up to the loading dock. Two new tractors, a Farmal and an International, were on the loading ramp. The officer fired a warning shot, and the subjects re-

sponded by returning his fire. Officer McCartney radioed for more assistance, and in a short time a full-scale search of the immediate area was underway. Soon thereafter, three of the appellants were apprehended in the immediate vicinity, and later in the morning, appellant Knust was found in a restaurant about a mile from the scene. The appellants were not informed of their constitution rights as required by *Miranda* until they were taken to the police station.

The issue presented to this Court is whether there was prejudicial error in admitting into evidence certain statements made by appellant Rogers which were obtained prior to advising him of his constitutional rights. It is also contended that these statements led to the discovery of other evidence which, being the fruit of the unlawful questioning, should also have been excluded.

Trooper York, an Indiana State Policeman, who participated in the search, noticed Rogers walking down a hill near U. S. Highway 50. York, with pistol drawn, told Rogers "to hold it." Rogers stopped immediately and raised his hands into the air. York holstered his revolver and "frisked" Rogers for the possibility of a weapon. No weapon was found, but York did discover some 38 caliber cartridges in Rogers' jacket pocket. York then asked, "Where is your gun?" Rogers responded, "I don't know anything about a gun." York, referring to the 38 caliber cartridges, asked, "What are you doing, throwing these?" At this moment, Trooper Wilson, also an Indiana State Policeman, arrived at the scene and asked Rogers, "Where were you hiding?" Rogers answered, "Up behind the tree." Wilson then stated, "Show us." Rogers turned around and led the officers back up the hill to a tree. A revolver and a walkie-talkie were found on the ground nearby. Trooper Wilson picked up the walkie-talkie and the gun, and remarked, "This gun hasn't been fired." Rogers then said, "I was just the lookout." Trooper York then asked Rogers, "How many of them were there?" Rogers replied that there were "four." Rogers was then handcuffed and

taken to the Aurora Police Station. All of the above statements made by Rogers, plus the revolver, the cartridges and the walkie-talkie were admitted into evidence over objection.

The State contends that the *Miranda* warnings were unnecessary at this early stage of the criminal investigation, in that the interrogation amounted to no more than "preliminary questioning done at the scene of the crime."

In *Miranda* v. *Arizona, supra,* the court stated:

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation *while in custody at the station or otherwise deprived of his freedom of action in any significant way.* It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries today or under any other system which may be devised and found effective, *the safeguards to be erected about the privilege must come into play at this point."* 384 U. S. at 477 [our emphasis]

Thus it appears that the test isn't so much *where* the questioning occurs, but whether or not the individual has been taken into custody or "otherwise deprived of his freedom of action in any significant way."

The State, in support of its contention that preliminary questioning done at the scene of the crime does not come within the scope of *Miranda,* refers us to *United States* v. *Hall* (2d Cir. 1969), 421 F. 2d 540. The *Hall* case concerned a bank robbery. Hall's car was observed near the scene of the crime, but it had not been positively connected with it. The F.B.I. had no description of the driver of the car. F.B.I. agents went directly to Hall's apartment and asked him if he would like to talk to them about his activities during the week of the robbery. Hall consented, giving a brief account of his conduct during the week in question. The interview took some seventeen minutes. The agents then checked out his story, and, upon finding inconsistencies, informed Hall that his story did

not check out and that further questioning would be necessary. Hall was given his *Miranda* warnings at this time. The issue for the *Hall* court to decide was whether the statements made by Hall during the seventeen minute interview were obtained in violation of *Miranda*. More specifically, the court had to decide whether Hall had been "deprived of his freedom of action in any significant way."

In reaching the conclusion that Hall had not been denied his constitutional rights and that his statements were properly admitted into evidence the court observed that the investigation was conducted in a very polite and casual manner. The investigation was routine, and the information sought was susceptible of innocent explanation. The Court further recognized that there was no reason to believe the agents would not have departed on request or allowed Hall to do so.

The factors which were persuasive in *Hall* are not present in the instant case. Rogers was stopped at gunpoint, frisked and was questioned about criminal activity. None of the information sought was susceptible of "innocent explanation," nor is there any reason to believe that the officers would have allowed Rogers to depart had he expressed a desire to do so.

The State also relies on two recent cases handed down by this Court as support for its proposition that the *Miranda* warnings were unnecessary.

In *New* v. *State* (1970), 254 Ind. 307, 259 N. E. 2d 696, the defendant uttered all of his statements *spontaneously,* not in response to questioning. Moreover, it was shown that the police officer tried, but the defendant did not give the police officer the opportunity to give the *Miranda* warnings.

In *Owen* v. *State* (1971), 255 Ind. 693, 266 N. E. 2d 612, a department store security officer followed a lady outside the store to ask her whether "she had anything that she had failed to pay for." The lady admitted to the officer that she had stolen a blouse from the store. The security officer had no

first-hand knowledge as to whether she had stolen the blouse. His only information was gained from an eye-witness who told him that the defendant had concealed the item underneath her clothing. Nor does it appear that the security officer actually observed the defendant as she passed through the check-out counter to thus enable him to see what she did or did not pay for. The lady was in no way restrained once she went outside the store. The question asked by the security officer was susceptible of an innocent explanation, and it was therefore properly found to be outside of the necessity of the *Miranda* warnings.

Thus it appears that the decisions handed down in *New* v. *State, supra,* and *Owens* v. *State, supra,* do not support the proposition that *Miranda* warnings are unnecessary for preliminary on-the-scene questioning. It is clearly evident from the record that when York stopped appellant Rogers on the hillside, at gunpoint, that Rogers had been taken into custody, or at least had been deprived of his freedom of action in a significant way. It is further evident that the questions directed to Rogers were accusatory in nature. We are therefore of the opinion that the *Miranda* warnings should have been given. For all intents and purposes, Rogers had been placed under arrest, even though the police had not formally announced it. It follows that the statements made by Rogers prior to the time he was given his *Miranda* warnings at the police station were erroneously admitted into evidence. Also, the "fruit" of the *Miranda* violation, namely, the pistol and the walkie-talkie, should also have been excluded. The 38 caliber cartridges were admissible, however, as they were obtained in a search incident to a lawful arrest.

It is also claimed that there was prejudicial error in admitting into evidence certain statements made by Rogers after he had been given his *Miranda* warnings.

Rogers admitted, while in custody at the police station, that he had met the other appellants in Louisville, Kentucky. Rogers

told police that he had been asked to drive one of the Hertz rental trucks and to act as a lookout during the the commission of the theft. The appellants, relying on *Bruton* v. *United States* (1968), 391 U. S. 123, contend that these statements implicated all of the co-defendants, and since Rogers did not testify at trial, appellants Noel, Gafford and Knust were denied their rights of cross-examination secured by the confrontation clause of the Sixth Amendment.

With this contention we are compelled to agree. Although the jury was instructed that Rogers' admissions should be disregarded in determining the guilt or innocence of Noel, Gafford and Knust, *Bruton* v. *United States, supra,* made it clear that such an instruction is not sufficient.

The State contends that the *Bruton* violation should be found to be harmless error, relying on *Harrington* v. *California* (1969), 395 U. S. 250. In *Harrington* v. *California, supra,* four co-defendants were tried together for first-degree murder. Three of co-defendants confessed, implicating Harrington, and these confessions were introduced at trial with limiting instructions that the jury was to consider each confession only against the confessor. One of the defendants who confessed, however, took the stand at trial, thus giving Harrington the opportunity to cross-examine. The confessions of the two defendants who did not take the stand did little more than place Harrington at the scene of the crime— a fact which Harrington himself admitted. Due to the fact that there was an abundance of other evidence placing Harrington at the scene of the crime, the court concluded that the constitutional violation amounted to harmless error under *Chapman* v. *California* (1967), 386 U. S. 18.

These facts are simply not present in the instant case, and therefore, this Court is of the opinion that *Chapman* v. *California, supra,* cannot be applied to either of the two aforementioned constitutional violations. Although there may be sufficient untainted evidence to sustain a jury verdict of guilty,

this Court is not satisfied that the untainted evidence is so convincing that the aforementioned errors could not have contributed to the defendants' convictions.

For the foregoing reasons, the judgment must be reversed and the cause remanded for proceedings not inconsistent with the views expressed herein.

Judgment reversed and remanded.

DeBruler, Givan and Prentice, JJ., concur; Arterburn, C.J., dissents.

NOTE.—Reported in 274 N. E. 2d 245.