JAMES BATES, SR. *v.* STATE OF INDIANA.

[No. 3-972A61. Filed March 28, 1973. Rehearing denied May 9, 1973. Transfer denied September 4, 1973.]

*Ralph R. Blume, Blume, Wyneken, Levine & Clifford,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Anthony J. Metz, III,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—The primary issue presented by this appeal is whether sufficient evidence was presented to sustain the conviction of defendant-appellant James Bates, Sr. for professional gambling.

Bates was charged by affidavit with the crime of professional gambling. Trial was to the court without the intervention of a jury. Bates was found guilty of the crime of professional gambling as charged in the affidavit, and sentenced to the Indiana State Farm for a period of six months and fined in the penal sum of $500. Bates filed his motion to correct errors which was overruled by the trial court and this appeal followed.

The evidence in the record before us most favorable to the finding of the trial court is as follows:

On March 15, 1971, Police Officers Richard Combs and George Grant of the Indianapolis Police Department were in Fort Wayne, Indiana, to "assist the Fort Wayne Police Department in the investigation of numbers." Between seven and eight A.M. on that morning Officers Combs and Grant, dressed in civilian clothes, entered the Jones Smoke Shop in Fort Wayne. Upon entering the premises they observed two people in the front and one gentleman in the back part of the premises. Bates was sitting at a table in the back of the building writing bank clearing numbers which are numbers corresponding to the daily stock market average.

Combs asked Bates for four numbers. Bates said, "Hell, man, I don't know ya." Combs identified himself as being from Indianapolis and Bates proceeded to write the four numbers for which Combs paid two dollars.

Another man then entered the building who said, "I'm in a hurry, I've gotta get my numbers in so I can get out of here." Bates wrote a number for this man. Bates then wrote two

numbers for Officer Grant for which Grant paid Bates eighty cents.

On the following day, March 16, 1971, at 7:40 A.M. Grant and Combs again entered the Jones Smoke Shop. Bates was sitting at the table in the rear of the building writing numbers. Bates wrote two numbers for Combs for which Combs paid one dollar, and two numbers for Grant for which Grant paid fifty cents.

Combs testified that the only conversation on the second day was as follows:

"I just told him that if I hit, I want my money, and he [Bates] said, 'You'll get your money.' "

On appeal, Bates argues that his conviction is not supported by sufficient evidence.

The scope of review to be applied by this court was recently stated in *Priola* v. *State* (1973), 260 Ind. 117, at 119-20, 292 N.E.2d 604, at 605, as follows:

"Initially, we must again reiterate that when we are called upon to decide an appeal concerning the sufficiency of the evidence of a conviction we will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the findings of the trial court. *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a jury could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Turner* v. *State* (1972), Ind., 287 N.E.2d 339."

The crime of professional gambling is defined in IC 1971, 35-25-1-2(3), Ind. Ann. Stat. § 10-2330(3) (Burns 1972 Cum. Supp.), as follows:

"(3) 'Professional gambling' means accepting or offering to accept, for personal gain or profit, money, credits, deposits of other things of value risked in gambling, or any claims thereon or interest therein. Without limiting the generality of this definition, the following shall be included: poolselling and bookmaking; maintaining slot machines, one-ball ma-

chines or variants thereof, pinball machines which award anything other than an immediate and unrecorded right of replay, roulette wheels, dice tables, or money merchandise pushcards, punchboards, jars or spindles, in any place accessible to the public; and conducting lotteries, gift enterprises, or policy or numbers games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage games played with cards, dice or counters, or accepting any fixed share of the stakes therein."

The foregoing evidence and reasonable inferences flowing therefrom provide a sufficient probative basis from which the trial court could find that Bates was guilty beyond a reasonable doubt of each element of the offense charged. We will not disturb that finding.

The second contention argued by Bates is that the trial court erred in admitting into evidence certain statements made by the defendant and the numbers slips obtained from him because the police officers did not advise Bates of his rights under *Miranda* v. *State of Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

In *Miranda*, at 478-479 of 384 U.S., at 1630 of 86 S. Ct., at 726 of 16 L. Ed. 2d, it is stated:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive

these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (Footnote omitted.)

The above language is clear that "[t]he requirements of warning and waiver imposed by *Miranda* v. [*State of*] *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, apply only to custodial interrogation." *New* v. *State* (1970), 254 Ind. 307, at 314, 259 N.E.2d 696, at 700.

In the instant case, there is no evidence of "custodial interrogation." The freedom of Bates was not restrained. On both March 15, 1971 and March 16, 1971, Bates was free to sell numbers, or not to sell numbers, to the police. He chose the former. *Miranda* does not require suppression of any of the evidence in this cause.

The judgment of conviction appealed from is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.