OVEL EMLER, JR. *v*. STATE OF INDIANA.

[No. 670S135. Filed August 24, 1972. Rehearing denied October 30, 1972.]

*Charles W. Symmes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Ovel Emler, Jr., appellant (defendant below), from a conviction for second degree murder.* On March 31, 1969, an indictment was returned charging appellant with first degree murder. Appellant entered a plea of not guilty and trial to a jury commenced on January 12, 1970. The jury returned a verdict of guilty to second degree murder and appellant was sentenced to the Indiana State Prison for life. A duly filed motion to correct errors was overruled and this appeal followed.

Appellant sets forth two main contentions of error.

(1) He claims the *"Miranda"* warnings were insufficient making appellant's signed confession inadmissible.

(2) He claims the evidence was insufficient to support a conviction for second degree murder. In particular, he contends there was insufficient proof of a specific intent to kill.

The rights form used in this case was as follows:

"The Indianapolis Police Department advises as follows:

(1) You have a right to remain silent.

(2) Anything which you say can be used against you in court.

(3 You have a right to have a lawyer present *now.*

(4) If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court.

I have read the above and understand it fully. I wish to make a voluntary statement and I do not want a lawyer. No force, threats or promises have been used by anyone in any way to make me sign this, and I sign this statement of having been advised of the above rights before any questions have been asked of me." (our emphasis)

---

* This case was reassigned to this office on June 29, 1972.

The rights required to be given a defendant are set out by former Chief Justice Warren in *Miranda* v. *Arizona* (1966), 384 U.S. 436, 444:

> "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and ■ that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."

We are of the opinion the rights form used in this instance adequately informed appellant of those rights set out in *Miranda*.

Appellant claims the portion of the form which reads, "If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court," is ■ misleading because it implies that if a party cannot afford an attorney he will not get one until he goes to court. We do not read such an implication into the statement. It is, in fact, true that only the court can appoint counsel for him. As Chief Justice Arterburn stated in a unanimous decision of this Court:

> "It is contended that the waiver which was read and explained to the appellant only told him that he was entitled to a lawyer, but that the court would appoint the lawyer, inferring that he was prejudiced because he would have to wait for the lawyer. The waiver properly stated the law. No one can appoint a lawyer but the trial court. Regarding this point the court in *Miranda* stated: 'This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners.'" *Thompson* v. *State* (1971), 256 Ind. 48, 54, 267 N. E. 2d 49, 52.

See also, *Robbins* v. *State* (1968), 251 Ind. 313, 241 N. E. 2d 148. The form states unambiguously that a defendant has the right to an attorney *now*.

Appellant also contends that the waiver was not made volun-

tarily, knowingly, and intelligently. The waiver form was read to him, he then read the waiver form, and he signed it. Each of the eleven pages of his statement contained the following paragraph:

"I Ovel Elmer Junior . . . make the following written statement voluntarily to Detective Joseph White and —, who have identified themselves to me as members of the Indianapolis Police Department.

I have been advised that I have the right to remain silent and now have a right to have counsel. I have been advised that anything I say in the following statement may be used against me in future criminal proceedings. I have not been promised any reward or leniency and I have not been threatened or abused in any way to make me give this statement. I make the following statement of my own free will."

In each instance this was followed by appellant's signature. Then the following paragraph appeared at the bottom of each of the eleven pages:

"The above statement has been read to me and given to me to read. I can read and hear and the facts and matters which are typewritten above are all true and correct and were stated by me voluntarily without any promise or threats whatsoever being made to me. I understand that this statement can be used against me in court and that I did not have to make any statement at all."

This too was followed by appellant's signature in each instance. A signed waiver is not conclusive, *Dickerson* v. *State* (1972), 257 Ind. 562, 276 N. E. 2d 845, but there is simply no evidence to refute it in this instance. Appellant had not been held in jail for an extended period nor is there any evidence of any form of coercion. In the course of lengthy direct and cross examination, appellant never even hinted that the confession was anything but voluntary. The objection at trial was not based on the circumstances surrounding the interrogation but went only to the form of the waiver. Since the appellant was sufficiently in-

formed of his rights and the evidence indicates the waiver was made voluntarily, knowingly and intelligently, the statement made by appellant to the police was properly admitted into evidence.

Appellant's second contention is that the evidence was insufficient to show the requisite intent to kill. He claims the evidence shows that he was too intoxicated to properly appreciate what he was doing.

In reviewing sufficiency of the evidence, this Court will not weigh the evidence nor determine the credibility of witnesses. Only the evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 477, 275 N. E. 2d 538.

The facts are as follows. The decedent, Steve, and his common law wife, Jackie, were in a bar and Steve was playing pool. Appellant entered and wished to play as well. When appellant reached for a pool cue the cue apparently caught in Jackie's hair. Words were exchanged between Jackie and appellant, including some name calling. Steve intervened and told appellant to cease his derogatory remarks. A fracas erupted between appellant and Steve, including swinging pool cues. The fight lasted about five minutes and appellant, bloodied in the face, left with the warning, "I'll be back." He then drove home, got his shotgun, and returned, the trip taking about thirty minutes. He entered the bar and told Steve to come outside but Steve refused. The woman who owned the bar then coaxed appellant outside and pleaded with him to go home. Appellant told her, "I am going to kill the son-of-a-bitch in there just as sure as the world." He took his shotgun from his car, pushed the woman aside and entered the bar. Appellant stood at the front near the bar

with Steve at the rear. He told Steve, "If you don't come outside I'll kill you here." He then raised the shotgun, aimed it at Steve, and shot him in the back.

When questioned, none of the witnesses could tell whether appellant was intoxicated or not. A woman who had been with him for part of the evening testified that she saw him have three drinks. At trial appellant testified that he had twenty to thirty drinks the day of the shooting but in his statement to the police he said, "I had a couple of beers, I mean you know, but I wasn't no way near tight." He said in his statement that he had control of his emotions and knew exactly what he was doing. He stated that he did intend to kill the decedent. At trial, although admitting that he told the police he intended to kill the decedent, he said his statement was incorrect and that he did not so intend.

Normally voluntary intoxication is not a defense in a criminal proceeding. In order for intoxication to relieve appellant from responsibility the crime charged must have involved specific intent and he must have been so intoxicated as to be incapable of entertaining the required specific intent. *New* v. *State* (1970), 254 Ind. 307, 259 N. E. 2d 696; *Storie* v. *State* (1970), 254 Ind. 301, 258 N. E. 2d 849; *Davis* v. *State* (1968), 249 Ind. 373, 232 N. E. 2d 867; *Cotton* v. *State* (1965), 247 Ind. 56, 211 N. E. 2d 158; *Hunter* v. *State* (1965), 246 Ind. 494, 207 N. E. 2d 207; *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882; *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N. E. 2d 99. This is a question of fact for the trier of facts. *New* v. *State, supra; Cotton* v. *State, supra.*

In the case at bar, although appellant changed his story at trial, he admitted to having the requisite intent and that he was not intoxicated at the time. He made statements at the scene, which he did not deny at trial, indicating clearly he intended his acts. No one who testified noticed any outward signs of intoxication on the part of appellant. The evidence

was surely sufficient for the jury to find that appellant was not so intoxicated that he could not form the required specific intent.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—I dissent. The advice of rights contained in the police form used in this case does not meet requirements of *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 694. The appellant was not informed that if he did not have sufficient funds to hire a lawyer, one will be furnished him before any questions are asked or the interrogation begun. He was not advised that he had a right to have a lawyer present during the interrogation. This advice form is deficient in my view as I have previously indicated in *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572, and *Dickerson* v. *State* (1972), 257 Ind. 562, 276 N. E. 2d 845. This advice form suffers from an additional defect not considered in prior cases, and that is it makes two statements which are contradictory, and would be very confusing to the average accused. He, the appellant, sitting in the police station, about to be interrogated, is advised that: "You have a right to have a lawyer present now." In the next sentence he is told that if he is poor he does not have the right to have a lawyer present now. He is told that if he is poor, the only right he has is to have a lawyer appointed for him by some unidentified court at some unspecified time in the future. In my view, an accused without money would not know after reading this form whether or not he had a right to the services of a lawyer at that point. He clearly did have that right under the standards set forth in

the *Miranda* case, and the failure of this form to state that right clearly and understandably renders it defective.

NOTE.—Reported in 286 N. E. 2d 408.