LINDBERG COE *v.* STATE OF INDIANA.

[No. 2-174A35. Filed March 26, 1975.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant (Coe) was charged by affidavit with the offense of assault and battery with intent to kill, waived jury trial, was convicted and received an indeterminate sen-

tence of not less than two nor more than fourteen years. He now appeals, asserting that the evidence shows that he was so intoxicated as to be unable to entertain the requisite specific intent, and that the evidence shows he was acting in self-defense.

We affirm.

The undisputed evidence is that Coe and his girl friend (Hyde), who was living with him at the time, were alone in Coe's apartment; that she received a number of stab wounds of sufficient severity to require two or three blood transfusions and hospitalization for two weeks; that Coe summoned police and, wearing a clean white shirt, met them outside and led them to the apartment.

The evidence contains two versions of the events in the apartment.

Hyde testified that she had gone into the bathroom to get dressed to return to her mother's house (her official residence and that of her children), that Coe pushed in the bathroom door, said "I'm going to get you for everything you have done to me", and proceeded to stab her in the head, the breast and the side with a butcher knife. She further testified that she had used drugs, both cocaine and heroin, but was not using any at that time, and that Coe had drunk three or four half pints of whiskey that day. She admitted that at one time about a month earlier she had hit Coe with a telephone and that she always carried a butcher knife in her purse, but she denied having ever previously either used a knife on Coe or threatened him with a gun.

Coe's version was that he had started to leave to get some whiskey and Hyde was upset either because he refused to give her money to get drugs or because she thought he was going to spend his money on other women, or both. She hit him from behind with a telephone receiver and then attacked him with a knife. "She hit me here and up side of the head, across the chin, two places here, a place here, and later on I had stitches here and this left shoulder and across the . . .

when I tried to get away, to turn around, I got cut across the side and back." Some of the cuts he received requiring stitching. He described their struggle from room to room as he tried to get control of the knife, how he eventually managed to throw a blanket over her, and how, when they were both holding the knife, she intentionally pushed it into her side, at which time he gained control of the weapon. He then helped her tend her wounds, then she got dizzy and lay down. He exchanged his bloody shirt for a clean one and, pretending he was going to call her mother, went to the "rent lady" and summoned the police. Coe, in order to show Hyde's violent nature, also testified concerning earlier episodes. On one occasion, he said, Hyde, in the presence of Coe's ex-wife and two of his children, drew a gun which she placed against his head while threatening to shoot him. On another occasion he learned she was using and selling drugs in his apartment and told her to move out. She came with her mother and sister to pick up her clothes but instead "when she came in, she came in cutting me, she cut me over both eyes, here, and then backed me up against the wall and stuck the knife right into my neck, and blood was running down". Hyde was finally pulled away by her sister and, while Hyde was in the kitchen seeking another knife, Coe fled the apartment. On a third occasion, they were having dinner in the Post House Cafeteria in the Greyhound bus depot in downtown Indianapolis when Hyde, thinking he was flirting with a woman at the next table, stabbed him in the chest with a knife from her purse and then at knife point forced him out to his car and back to their motel room.

Coe's ex-wife and 17 year old daughter testified to the alleged gun threat.

The investigating officers testified that Hyde had received knife wounds in the head, breast, and side, and was slashed across the abdomen, that Coe was wearing a clean white shirt, and that Coe had a small non-bleeding cut on the left side of his neck, and that they found a bloody shirt in the apart-

ment. The shirt, introduced into evidence, had one cut or tear behind the left shoulder, and several scratches.

Coe's first contention is that the evidence shows he was too intoxicated to form the specific intent that is an essential element of the offense. The only evidence of intoxication is the testimony of Hyde that Coe had had three or four half-pints of whiskey. She also testified that he was pretty high, but was not drunk. Coe's only evidence on the question was his statement that he had been drinking earlier (amount unspecified), but wasn't drinking at the time Hyde was injured. None of the investigating officers were questioned on this matter. Whether Coe was so intoxicated as to be unable to form a specific intent is a question to be decided by the trier of fact, *New* v. *State* (1970), 254 Ind. 307, 259 N.E.2d 696, 699, *Emler* v. *State* (1972), 259 Ind. 241, 286 N.E.2d 408, 412, and in view of the meagerness of the evidence we cannot say the decision was wrong.

Coe's second contention is that the evidence shows he acted in self-defense and thus he should not have been convicted. Despite Coe's statement in his brief that "the uncontraverted [sic] evidence establish[es] that Mrs. Hyde was the aggressor and that she committed an assault upon Defendant Coe at his home", there is the testimony of the only other witness to the event, Mrs. Hyde, that controverts the claim of self-defense in its entirety. In addition, there is the testimony of the police officers that at the time of their arrival Coe appeared to have only a small, non-bleeding cut on his jaw, and that Coe, who, if his story were true, would be bleeding from one or more of the cuts he claims to have received, was wearing a clean white shirt. The trier of fact is not required to accept the accused's story as true but instead, on the basis of the other evidence adduced, may entirely disbelieve and disregard that story. See *Lee* v. *State* (1973), 156 Ind. App. 569, 297 N.E.2d 890; *Lytle* v. *State* (1968), 251 Ind. 413, 241 N.E.2d 366.

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.