Ovel EMLER, Jr., Petitioner,

v.

Jack R. DUCKWORTH, Warden, and Indiana Attorney General, Respondents.

No. S82–334.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 20, 1982.

Ovel Emler, Jr., pro se.

Kermit R. Hilles, Deputy Atty. Gen., for Linley Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for respondents.

MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is presently before the Court on a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum of decision and order constitutes this Court's findings of fact and conclusions of law.

The petitioner, Ovel Emler, Jr., is an inmate at the Indiana State Prison at Michigan City, Indiana, where he is currently serving a life sentence after having been convicted in state court of second degree murder. Having exhausted his state court remedies, see *Emler v. State,* 259 Ind. 241, 286 N.E.2d 408 (1972), petitioner now seeks relief in this Court.

Petitioner raises two arguments in his application for a writ of habeas corpus. First, he contends that the *Miranda* warnings given him were inadequate in that they were ambiguously worded. Second, petitioner asserts that there was insufficient evidence presented at his trial to sustain a finding of specific intent to kill. Both of these issues were presented to the state courts and disposed of against the petitioner. *Emler v. State, supra.*

Petitioner's first contention is that the wording of the *Miranda* form warnings used by the Indianapolis Police Department was deficient in that it created a false impression in the petitioner's mind. Petitioner argues that the wording of the warnings led him to believe that, had he requested representation of appointed counsel, the petitioner would have had to remain in jail until some undetermined future date when he could appear before the trial judge and have an attorney appointed to represent him. Petitioner argues that it was his fear of an indefinite jail stay awaiting this future appearance before the trial court that caused him to waive his right to counsel.

An accused may waive the right to counsel only where he does so knowingly, intelligently, and voluntarily. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Further, there is a presumption against a waiver of the right to counsel, a presumption which can be overcome only by proof of "an intentional relinquishment or abandonment" of that right. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *see also Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Finally, the question of whether there has been a valid waiver of the right to counsel is to be determined in the light of the particular facts of each case. *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Bearing the above in mind, this Court now turns to a review of the facts in this matter.

The form warning used by the Indianapolis Police Department in this case reads, in its entirety:

INDIANAPOLIS POLICE DEPARTMENT Case # 444727–D

The Indianapolis Police Department advises as follows:

1) You have a right to remain silent.
2) Anything which you say can be used against you in court.
3) You have a right to have a lawyer present now.
4) If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court.

/s/ Joseph T. White

Police Officer, City of Indpls.

I have read the above and understand it fully. I wish to make a voluntary statement and I do not want a lawyer. No force, threats or promises have been used by anyone in any way to make me sign this, and I sign this statement of having been advised of the above rights before any questions have been asked of me.

/s/ X Ovel Emler, Jr.

Signed at 9-50 o'clock P.M. this 9 day of Feb , 1969 at Police Hq. – in the City of Indianapolis, Indiana. Room E–444

/s/ Danne J. Holmes

(Record, State's Exhibit # 6, at 282).

After signing the *Miranda* form warning, the petitioner was questioned by Officer Joseph White of the Indianapolis Police Department. These questions and the petitioner's answers thereto were reduced to writing. Each page of this eleven-page statement contained the following admonition, all of which were signed by the petitioner:

I have been advised that I have the right to remain silent and now have a right to have counsel. I have been advised that anything I say in the following statement may be used against me in future criminal proceedings. I have not been promised any reward or leniency and I have not been threatened or abused in any way to make me give this statement. I make the following statement of my own free will.

\* \* \* \* \* \*

The above statement has been read to me and given to me to read. I can read and hear and the facts and matters which are typewritten above are all true and correct and were stated by me voluntarily without any promise or threats whatsoever being made to me. I understand that this statement can be used against me in court and that I did not have to make any statement at all.

(Record, State's Exhibit # 7, at 294–304).

On appeal, the Supreme Court of the State of Indiana found in affirming the trial court that "the rights form used in this instance adequately informed appellant of those rights set out in *Miranda*," and "the appellant was sufficiently informed of his rights and the evidence indicates the waiver was made voluntarily, knowingly and intelligently ..." *Emler v. State,* 286 N.E.2d at 410–11.

The seminal case in this circuit dealing with the issue of ambiguously worded *Miranda* warnings is *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir. 1972). In that case, the Court of Appeals for the Seventh Circuit found that a *Miranda* warning which stated "[w]e have no way of furnishing you with an attorney, but one

will be appointed for you, if you wish, if and when you go to court" created a "contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown future time" and was therefore constitutionally infirm. *Twomey,* at 1249–50. The facts of this case, while bearing a superficial resemblance to those in *Twomey,* are actually much closer to those set forth in *Placek v. State of Illinois,* 546 F.2d 1298 (7th Cir. 1976).

In *Placek,* the petitioner argued that, because the *Miranda* warnings given him did not state that he had an *immediate* right to counsel, they were constitutionally infirm. The Court of Appeals held, on the contrary, that the warning given Placek adequately conveyed his right to the appointment of counsel and his right to remain silent until then. In distinguishing *Twomey,* the Court stated that there was no internal inconsistency in the warning given Placek, unlike that in the *Twomey* case. Thus, the police did not appear to take away with one hand what they were offering with the other.

The form used in this case states clearly that the accused has a right to immediate representation of counsel, and that one lacking the funds necessary to obtain counsel of his own choice has the additional right to have the Court appoint an attorney for him. The form merely states the law. As the Supreme Court of the State of Indiana said when addressing the identical argument raised by the petitioner on his direct appeal:

It is, in fact, true that only the court can appoint counsel for him. As Chief Justice Arterburn stated in a unanimous decision of this Court:

"It is contended that the waiver which was read and explained to the appellant only told him that he was entitled to a lawyer, but that the court would appoint the lawyer, inferring that he was prejudiced because he would have to wait for the lawyer. The waiver properly stated the law. No one can appoint a lawyer but the trial court.

Regarding this point the court in *Miranda* stated: 'This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners.' " *Thompson v. State* (1971), 256 Ind. 48, 267 N.E.2d 49, 52.

See also, *Robbins v. State* (1968), 251 Ind. 313, 241 N.E.2d 148, 242 N.E.2d 925. The form states unambiguously that a defendant has the right to an attorney *now. Emler v. State*, 286 N.E.2d at 410. In short, there is no internal inconsistency in the Indianapolis Police Department's warning which would render the *Miranda* warning given the petitioner constitutionally deficient.

 Petitioner raises as his second line of attack the argument that there was insufficient evidence presented at his trial to sustain a finding of specific intent to kill. In federal habeas proceedings, the role of the federal court is not to reweigh the evidence as a *de novo* trier of fact, but rather to determine whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original). The facts as recited by the Supreme Court of the State of Indiana in *Emler v. State, supra,* are as follows:

The decedent, Steve, and his common law wife, Jackie, were in a bar and Steve was playing pool. Appellant entered and wished to play as well. When appellant reached for a pool cue the cue apparently caught in Jackie's hair. Words were exchanged between Jackie and appellant, including some name calling. Steve intervened and told appellant to cease his derogatory remarks. A fracas erupted between appellant and Steve, including swinging pool cues. The fight lasted five minutes and appellant, bloodied in the face, left with the warning, "I'll be back." He then drove home, got his shotgun, and returned, the trip taking about thirty minutes. He entered the bar and told Steve to come outside but Steve refused. The woman who owned the bar then coaxed appellant outside and pleaded with him to go home. Appellant told her, "I am going to kill that son-of-a-bitch in there just as sure as the world." He took his shotgun from his car, pushed the woman aside and entered the bar. Appellant stood at the front near the bar with Steve at the rear. He told Steve, "If you don't come outside I'll kill you here." He then raised the shotgun, aimed it at Steve, and shot him in the back.

When questioned, none of the witnesses could tell whether appellant was intoxicated or not. A woman who had been with him for part of the evening testified that she saw him have three drinks. At trial appellant testified that he had twenty to thirty drinks the day of the shooting but in his statement to the police he said, "I had a couple of beers, I mean you know, but I wasn't no way near tight." He said in his statement that he had control of his emotions and knew exactly what he was doing. He stated that he did intend to kill the decedent. At trial, although admitting that he told the police he intended to kill the decedent, he said his statement was incorrect and that he did not so intend.

*Emler v. State,* 286 N.E.2d at 411–12. Applying the standard enunciated in *Jackson v. Virginia* to the facts set forth above, this Court concludes that there was ample evidence upon which the trier of fact could have found the necessary specific intent to kill.

Based on the above, the petition for writ of habeas corpus is hereby DENIED, and this case is accordingly DISMISSED. SO ORDERED.