RAYMOND CHARLES LAMB *v.* STATE OF INDIANA.

[No. 175S29.  Filed June 4, 1976.]

*Thurman M. DeMoss,* of Franklin, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

HUNTER, J.—Raymond Charles Lamb was convicted of first degree murder after jury trial in the Jefferson Circuit Court. He was sentenced to imprisonment for life. His appeal presents three issues for determination:

1. Whether the trial court erred in overruling appellant's motion to suppress statements made by the defendant;
2. Whether the trial court erred in refusing to give one of defendant's instructions; and
3. Whether the trial court erred in denying appellant's motion for mistrial, predicated upon the state's voir dire examination of prospective jurors.

## I.

Procedurally, appellant challenged the admissibility of his confession through a pre-trial motion to suppress. After a hearing on the motion to suppress, at which appellant did not testify, the trial court overruled the motion. At trial when the confessions were introduced, appellant did not raise any objection other than to rely upon his earlier motion. The overruling of such motion was assigned as error in appellant's motion to correct errors, and it is that error which we review below. In so doing, we review the evidence before the trial court at the hearing on the motion to suppress together with all evidence presented prior to the admission of the confessions.

Appellant maintains that statements he made to the police on September 2d and 6th, 1973, were not voluntarily given and should have been suppressed. When the statements were given, appellant had been in jail for several months on another charge. Commencing in July, 1973, John Lasiter and Sheriff John Means, both of the Johnson County Sheriff's Department, began questioning appellant about the murder here charged. The frequency of these sessions was no more than twice a week, and the duration of each session ranged from half an hour to forty-five minutes. Appellant's *Miranda* rights were explained to him before each of these inquiries. These sessions were discontinued sometime during the latter part of August, apparently because they were unproductive.

Sheriff Means testified at the motion to suppress hearing that it had been at least two weeks, possibly three, since appellant had been questioned about the murder prior to his confesion on September 2. The ground work for appellant's confession on September 2 was laid when, on September 1, appellant sent a note asking to see Lasiter. When Lasiter responded, the appellant told him:

[CROSS-EXAMINATION OF JOHN LASITER.]

A. ". . . if I would make arrangements for him to have a telephone conversation with Bonnie Emmert, the girl he had been living with, that after asking what she thought that he would probably confess to the two homicides I had been working on. So I made these arrangements and was notified that Bonnie would return my call at 10:30 A.M. on Sunday. So that was when I went down to the jail and got him out and took him to the downstairs office and she called approximately 9:30 A.M. He talked to her for 30 to 40 minutes. After that he got up from the telephone and said 'I am ready to confess' and we went to my office and he did so."

Appellant urges that his confession was rendered involuntary because of his fear that his common-law wife, Bonnie, might be charged as an accessory to the theft for which he was incarcerated and/or in the murder under investigation. Appellant was also concerned about the fate of his children in the event Bonnie was so charged. On this point, Sheriff Means' testimony indicates appellant was advised at some time during the interrogations of the possibility that Bonnie might be charged as an accessory to the homicide. There was absolutely no testimony presented at the motion to suppress hearing, however, which would indicate that the investigating officers directly threatened to arrest Bonnie or take away the children if appellant did not confess to the murder. The officers denied making any threats or promises to induce appellant's confession and appellant did not testify at the motion to suppress hearing.

The force upon the will of appellant of any implied threat arising from the Sheriff's statement that it was possible that

appellant's wife might be charged as an accessory must be determined from facts peculiarly within the accused's own knowledge and from circumstantial evidence. Here, the circumstantial evidence linking appellant's wife to the murder was sparse, if not non-existent. To be sure, this case is not like *Hall* v. *State*, (1971) 255 Ind. 606, 266 N.E.2d 16, relied upon by appellant. In *Hall*, the officers advised the defendant that his wife was a prime suspect. Here, officers made no such statement. In the absence of such a statement by the police, we hold that the mere advice of the possibility of an accessoryship charge, without more, did not render appellant's confession involuntary.

Appellant, however, suggests additional factors which he believes weigh upon the voluntariness of his confession. To the foregoing, appellant adds the pressures resulting from confinement and "the psychological impact of interrogation by many." In addition to the series of interrogations described above, appellant was also questioned on other occasions by officers from other agencies about other crimes. We can find nothing in the record, however, which indicates that any of these other questioning sessions, separately, together or added to any or all of the questioning sessions about this murder cumulatively destroyed appellant's free will. To the contrary, we believe appellant's request to talk with Lasiter, coming several weeks after he had last been questioned about this murder, is a strong indication that appellant's will was not overborne and that his decision to confess was made after careful reflection.

Prior to taking the September 2 statement, appellant was again advised of his *Miranda* rights and executed a written waiver thereof. After reviewing all the evidence presented at the motion to suppress hearing, we hold that appellant's confessions were voluntarily given, and the trial court properly overruled appellant's motion to suppress.

## II.

Police at the crime scene recovered several items including hair, trash, soft drink cans, a broom, a window knob, a wrist watch, water from a toilet and other items. One Sgt. Elzroth of the State Police Laboratory performed various tests upon these items. Before trial, Sgt. Elzroth left the employment of the State Police, and attempts to locate him at the time of trial were unsuccessful. His successor, who may have assisted in performing some of the tests, was not called. As a result, the state presented no evidence on the findings in the reports made by Sgt. Elzroth. Appellant tendered his instruction No. 1 which read:

> "The unexplained failure of a party to produce a witness within its control may give rise to an inference that had the witness testified the testimony would have been unfavorable to that party's cause."

The trial court refused to give this instruction and appellant assigns such refusal as error. From the evidence adduced at trial that Sgt. Elzroth was no longer employed by the State Police, the trial court could reasonably conclude that he was not a witness within the state's control. Assuming *arguendo* that Sgt. Elzroth was constructively under the state's control as to any tests which he performed prior to his termination, nevertheless, the state's failure to produce him as a witness was not unexplained. The record shows that a diligent, but unsuccessful, effort was made to locate Sgt. Elzroth. Where the evidence does not support an instruction, it is not error to refuse it. *Bivins* v. *State*, (1970) 254 Ind. 184, 258 N.E.2d 644. The trial court did not err in refusing appellant's instruction No. 1.

## III.

On voir dire examination the prosecutor read each prospective juror the following statement:

> "The rule of law which throws around the defendant the presumption of innocence and requires the State to establish beyond a reasonable doubt every material fact averred

in the indictment is not intended to shield those who are actually guilty from just and merited punishment, but it is a humane provision of the law which is intended for the protection of the innocent, and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime."

At the time the statement was read appellant objected on the ground that it was an improper statement of the law. As an *instruction* the statement was approved in *Anderson* v. *State*, (1885) 104 Ind. 467, 4 N.E. 63. Appellant now argues that the statement was prejudicial in that it tended to dilute the presumption of innocence by asking prospective jurors to ignore it. We believe a better place for this particular statement would have been in an instruction and not in voir dire. We find that an instruction similar to the above statement was given to the jurors without objection by appellant. Nevertheless, the purpose of voir dire is to determine whether a prospective juror is able to deliberate fairly on the issue of guilt. In this connection, the statement merely explains that the presumption of innocence is not irrebuttable in fact, if the state presents evidence beyond a reasonable doubt. We hold that appellant's in-court objection and the objection raised in appellant's brief are both without merit and do not constitute reversible error.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Givan, C.J., Arterburn, DeBruler and Prentice, JJ., concur.

NOTE.—Reported at 348 N.E.2d 1.