LESTER E. NIEHAUS *v.* STATE OF INDIANA.

[No. 476S129. Filed January 25, 1977. Rehearing denied April 19, 1977.]

*Jack N. Van Stone, Rice & Van Stone,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *John P. Avery,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with murder in the first degree and convicted of murder in the second degree in connection with the death of Lilly Scudmore, which occurred in Posey County on December 24, 1973. He was sentenced to life imprisonment. His direct appeal to this Court presents three issues concerning the admissibility of evidence:

(1) Admissibility of statements made by the defendant during police interrogation, in view of police advice that he could have legal counsel at a later time.

(2) Admissibility of results of a polygraph test given to the defendant by the police conducting the investigation.

(3) Admissibility of testimony from a forensic odontist connecting the defendant to teeth marks found upon the decedent's breast.

Four or five days following the homicide, the defendant appeared voluntarily at the office of the sheriff of Posey County, where he was advised of his rights, interrogated and released. He subsequently moved to Lake County, where he was contacted by the police and voluntarily submitted to a polygraph test on May 13, 1974. It is not clear from the briefs, but we assume, for the purposes of this opinion, that the results of the test were exculpatory.

On December 12, 1974, the indictment against the defendant was filed in Posey County, and at 11:00 p.m. on December 13th he was arrested in Lake County. He was taken immediately to the police station in Gary and was given what is generally referred to as "Miranda warnings." He then signed a waiver, hereinafter set forth, and was interrogated. In the course

of this interrogation, he made highly incriminating admissions that were later introduced into evidence over his objections.

## ISSUE I

The defendant filed a pre-trial motion to suppress the aforementioned statements, which was overruled. At the trial, the statement was admitted into evidence over his objection. The basis for the motion and objection was that the statement had been taken without the defendant having first been properly advised. It is not denied that the officer taking the statement had told the defendant, prior to the interrogation, that he had a right to have a lawyer of his choice and that if he could not employ one, one would be appointed for him when they returned to Posey County. It is the defendant's contention that he was misled into believing that he was not entitled to counsel, as a matter of right, at the time of the interrogation and that, but for such misconception, he would not have submitted to it.

The defendant relied upon *Goodloe* v. *State*, (1969) 253 Ind. 270, 252 N.E.2d 788, wherein we ordered a new trial because of the admission of statements made following an inadequate warning. In that case, the appellant had been advised that "* * * if she didn't have any money for an attorney the State would furnish her an attorney." We held that to be insufficient under the requirements of *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 478, 479, because it did not inform her that she had the right to the presence of an attorney during the interrogation. Defendant's case, however, is more akin to *Emler* v. *State*, (1972) 259 Ind. 241, 286 N.E.2d 408 and *Thompson* v. *State*, (1971) 256 Ind. 48, 267 N.E.2d 49.

In *Emler* v. *State, supra,* we held that informing the defendant of his right to appointed counsel, with the qualification that such counsel could be available only at a later time, did not imply the absence of a right to have counsel present during the interrogation, in view of a clear explanation of

the defendant's right to consult with an attorney at any time before or during interrogation.

In the case at bar, Defendant had signed a waiver form, as follows:

### "INTERROGATION; ADVICE OF RIGHTS
### YOUR RIGHTS

#### INDIANA STATE POLICE POST

Place    Danville
Date     12-29-73
Time    12:03 A.M.

"Before we ask any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### "WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

"Signed     Lester Niehaus

Witness:   Tpr. Joseph R. Rhodes    1927
Witness:   E. Reine    1454
Time:     1206 A.M."

The testimony disclosed that the interrogating officers fully advised the defendant of his rights, as contained in the foregoing excerpt and that he stated that he understood them.

There was no contention that the giving of such waiver was involuntary but only that the warnings given to him were misleading. Additionally, the evidence disclosed that the defendant had been interrogated on two prior occasions and had been advised on those two occasions that he was entitled to counsel during interrogation.

The question to be determined by the trial judge upon the issue of the admissibility of the statements was whether or not they had been made voluntarily and with the knowledge that he was not required to make them. Clearly, the evidence was sufficient to warrant the conclusion that they were.

## ISSUE II

The trial court sustained the State's motion *in limine*, proscribing reference during the trial to the defendant's having taken a lie detector test, without first obtaining leave of court outside the presence of the jury. It is the defendant's position that had the results been unfavorable to him, the State would have been permitted to introduce evidence concerning it and that it is manifestly unfair to deny the defendant the reciprocal right, citing *Reid* v. *State*, (1972) 259 Ind. 166, 285 N.E.2d 279.

The admissibility of polygraph evidence was not sufficiently litigated in the court below, and the issue attempted to be presented for review, consequently, has not been briefed sufficiently to warrant an in depth treatment here. *Reid* v. *State*, *supra*, does not support the defendant's position. The "waiver" referred to in that case was, in fact, a waiver and stipulation that the results could be used as evidence. The waiver referred to in the case at bar was merely a waiver of his rights against self-incrimination. There was no waiver of the right to object to the introduction of the evidence upon other grounds, i.e. unreliability, hearsay, invasion of the province of the jury to determine credibility.

Additionally, we do not regard the court's ruling sustaining the motion *in limine* as a ruling eliminating the necessity of an in-trial offer. We have no way of knowing precisely what evidence was excluded. In this respect, the case differs from *Lockridge* v. *State*, (1975) 263 Ind. 678, 338 N.E.2d 275 and *Lamb* v. *State* (1976) 264 Ind. 563, 348 N.E.2d 1, where we held that in-trial action was not necessary to preserve the issue. The defendant was not categorically precluded from offering the evidence concerning the test. Rather, he was only precluded from offering it without prior leave of court. It does not appear that such leave was requested, and we hold that under such an order, an in-trial offer to prove would be essential.

The following cases and articles deal with the problems presented by polygraph evidence when properly presented. *Zupp* v. *State*, (1972) 258 Ind. 625, 283 N.E.2d 540; *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130; *Carpenter* v. *State*, (1968) 251 Ind. 428, 241 N.E.2d 347; *Levitt*, Scientific Evaluation of the "Lie Detector," 40 Iowa Law Review 440 (1955); *Skolnick*, Scientific Theory and Scientific Evidence: An Analysis of Lie Detection, 70 Yale Law Journal 694 (1961); *Annotations:* 23 ALR2d 1292 (1952); 53 ALR3d 1005 (1973).

## ISSUE III

A substantial part of the State's case was predicated upon the testimony of Dr. Miles Standish, testifying as a forensic odontist, expert in relating bite marks or tooth impressions to the teeth that made them. Over objections that the witness did not qualify as an expert in the area and the further objection that the reliability of the area of claimed expertise was not sufficiently established to permit the expression of an opinion, the witness was permitted to give his opinion that bite marks found upon the victim had been inflicted by the defendant.

Among other injuries sustained by the decedent was a bite or bites upon her left breast. The breast was excised and

preserved. Thereafter, models were made of the breast including the teeth marks thereon, and models were made of the defendant's mouth and teeth. By photographic processes, negatives of the models were made, and by superimposing these photographic negatives upon each other, common reference points could be determined between the defendant's teeth and the victim's breast. The witness' opinion was based upon the number of such common reference points and his determination of the degree of reliability of each, as possible, probable or highly probable.

Dr. Standish acknowledged that the identification of suspects by this manner of comparison between marks in human tissue and the teeth of suspects was a relatively new procedure and had not yet been extensively used. He further acknowledged that this was the first occasion of his having personally undertaken such a determination. From this, the defendant contends that the field is not sufficiently recognized for reliability as to qualify as an area of expertise and that Dr. Standish was not sufficiently experienced in the area to qualify as an expert.

As to the first contention, the defendant relies upon holdings excluding evidence of polygraph test results as not being sufficiently reliable; but we see a marked distinction here. It is acknowledged that in any given case, unreliable results may be produced in a polygraph test by influences that cannot be controlled or compensated for by the examiner. The method of identification utilized here, however, is simply a matter of comparison of items of physical evidence to determine if they are reciprocal. The methods for making such comparisons are indeed complex and require skilled technicians to perform, but they consist of standardized procedures known to procure accurate models and measurements. We see no reason why such evidence should be rejected as unreliable, simply because it has thus far had limited application.

As for the qualifications of Dr. Standish, we deem it unnecessary to go into great detail. His testimony revealed

that he was a graduate dentist with some thirty years of practice and teaching experience. He had become interested in this subject several years earlier, had attended twelve to fifteen lectures and read thirty to forty articles upon the subject by others experienced in the field. The determination of whether a witness is qualified to testify as an expert lies in the sound discretion of the trial court and may not be set aside unless there is manifest abuse of discretion. *Tyler* v. *State*, (1968) 250 Ind. 419, 236 N.E.2d 815; *Dougherty* v. *State*, (1934) 206 Ind. 678, 191 N.E. 84.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and Arterburn and Hunter, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—The victim of this crime was killed in Posey County on December 24, 1973. Posey County is located on the Ohio River in the southern most part of the State. Appellant was arrested for the killing in Lake County on December 12, 1974. Lake County is in the northern most part of the State on the shores of Lake Michigan. Upon his arrest, appellant was taken to jail in the city of Gary in Lake County, where he was immediately given an advice of rights in fulfillment of the requirements of *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. This first advisement of rights included the following statements:

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Appellant then signed a waiver of rights form. He was interrogated and denied the crime. Thereafter, during further interrogation and prior to making any self-incriminating statements, appellant told his interrogators that he wanted to talk to a lawyer before answering any further questions. The interrogating officers then replied that he could call an attorney and employ an attorney of his choice, but that if he could not, he would get an attorney when he arrived back in Posey County where one would be appointed for him. The interrogation was then continued in Lake County and appellant made his confession. Appellant testified that he had only fifty dollars at the time and did not feel that was enough to hire a lawyer.

In sum, the advice of rights came to the attention of appellant from two sources: the standard written form and the oral statement of the interrogating officer. The written form correctly granted the right to the advice and presence of a lawyer before answering questions. The oral statement of the officer recanted the grant of that right and substituted for it the right to have counsel at some unspecified time in the future several hundred miles away. The oral statement was incorrect and misleading.

Faced with this sequence of events, namely, the correct written advisement, the attempted exercise of the right to counsel, and the incorrect oral advisement, anyone would reasonably believe that there was no immediate right to appointed counsel before submitting to further questioning. As the advisement of rights was ambiguous and misleading here, the requirement of *Miranda* that the explanation of the right to counsel in such advisements be both effective and express was not satisfied. *Sotelo* v. *State,* (1976) 264 Ind. 298, 342 N.E.2d 844; *Goodloe* v. *State,* (1969) 253 Ind. 270, 252 N.E.2d 788. The incriminating statements made to the police should have been suppressed. I would reverse and order a new trial.

NOTE.—Reported at 359 N.E.2d 513.