Samuel J. GUTIERREZ et al., Appellants-Defendants,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 476S126.

Supreme Court of Indiana.

May 1, 1979.

⚷ 412.2(5)

J. Michael Katz, J. Douglas Angel, Katz & Brenman, Merrillville, Terry C. Gray, Gary, for appellants-defendants.

Theo. L. Sendak, Atty. Gen., Jane M. Gootee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

PRENTICE, Justice.

Defendants (Appellants) were convicted in a trial by jury of murder in the first degree and murder in the perpetration of a robbery. Ind.Code § 35–13–4–1 (Burns 1975). They were sentenced to life imprisonment for murder in the first degree, with sentencing withheld on the second count. They raise the following issues on appeal:

(1) Whether the trial court erred in overruling the defendants' motions to suppress their individual confessions.

(2) Whether the trial court erred by failing to effectively delete all references to the defendants in each of the confessions, or in the alternative, by failing to grant their motions for severance.

(3) Whether the trial court erred in refusing the defendants' tendered instructions on the defense of coercion and duress.

(4) Whether the trial court erred in denying the defendants' motion for mistrial.

\* \* \* \* \* \*

## ISSUE I

The defendants raise as their first issue, the denial of their motions to suppress and reject their individual confessions, and the overruling of their in-trial objections made to the admission of the confessions. Each defendant challenges the voluntary nature of his confession, alleging that he was denied certain of his constitutional rights at the time that the confession was made.

The facts surrounding the taking of defendant-Gutierrez's statement indicate that he was arrested sometime during the afternoon of April 14, 1975. At about 4:00 p. m. he was taken to the booking area where he was told that he was a suspect in the investigation of a double murder, and advised of his constitutional rights. Among the rights of which he was advised, was "the right to an Attorney, and if he could not afford an Attorney, that one would be appointed for him by the State at a later time. And that if he wished to talk to us (the police) he had also the right to cease at any time." The defendant agreed to take a polygraph test after stating that he knew nothing of the incident. After the test was administered,

the defendant was told by the police that he had given untruthful answers. He was also told that they had obtained information from one of his co-defendants with whom he later spoke.

At approximately 9:00 that same evening, the defendant was taken to the detective bureau, where he was readvised of his constitutional rights and was given a waiver form to sign. Prior to signing the waiver form, he asked to make a phone call. He talked to his father and then to an attorney, after which he agreed to give a statement. At the trial the defendant testified that the attorney had advised him that he could remain silent or stop talking at any time if he so chose. He also testified that he understood this advice, but that he chose to ignore it. The waiver form was subsequently signed and his statement was given. Before signing the statement, the defendant again called his father and the attorney and read portions of the statement over the phone to both. After having made the phone calls, the defendant signed the statement.

Several police officers testified that the waiver form was read by and to the defendant before it was signed, and that the defendant indicated that he understood it. None of the officers who were present both at the time of questioning and at the trial, recalled the defendant mentioning that his attorney had told him not to sign anything or make any statements. The attorney with whom the defendant spoke, testified that he did speak to the defendant twice on the night in question, and that on the first occasion he advised the defendant to refrain from making a statement or discussing the matter with anyone. During this same conversation, the attorney also spoke with one of the officers, but said nothing about terminating the questioning.

On appeal the defendant argues that his statement was not voluntarily made based upon the fact that he was not taken before a magistrate before questioning, that he was only informed that an attorney would be appointed at a later time, that the police continued to question him after having been informed that his attorney had advised him to say nothing, that the waiver form which he signed was never read to him nor explained, and that he was the victim of psychological coercion due to the possibility that the police attributed false qualities to the polygraph test results.

Defendant-McCall was arrested by the Indiana State Police in Terre Haute and advised of his constitutional rights at around noon on April 13, 1975. He was transported by airplane to Gary on the 14th. On the following morning at 10:30, McCall was taken to the detective bureau where he was again given his constitutional rights and questioned. Among the rights of which he was informed, was the "right to have his lawyer present with him during the time of the taking of the statement." After giving an oral statement, the defendant asked to talk to his attorney, which request was granted. Prior to giving a written statement he expressed fear for his family and himself, and requested protection. In response to his request for protection he was told by the police that all they could do was to talk to the F.B.I. The defendant was placed in contact with an F.B.I. agent, after which he proceeded to give a rather lengthy statement. Various breaks were taken, during which the defendant was permitted to see his family.

Officer Highsmith testified that the waiver form was executed prior to the giving of the written statement. He further testified that McCall's attorney never indicated that he wanted to be present during the taking of the statement, and that McCall had every opportunity to talk to his attorney during the statement.

McCall took the stand and stated that he was fully advised of his rights and that he signed the waiver form after having read it and had it read to him prior to giving his statement. On appeal, McCall questions the validity of the warrants upon which he was arrested, and argues that his confession was the product of his illegal detention and was thus tainted. He further contends that he was beaten, promised protection for his family and otherwise coerced and cajoled

into waiving his rights and making a statement.

Any error with regard to the warrants upon which the defendant was arrested was not preserved for appeal, since the defendant failed to raise the issue either in his motion to suppress or in his motion to correct errors. *Finch v. State* (1975) 264 Ind. 48, 338 N.E.2d 629. Regardless of whether or not the issue was waived, however, sufficient evidence was presented to support a finding that the statement was "sufficiently an act of free will to purge the primary taint." *Wong Sun v. United States* (1963) 371 U.S. 471, 486, 83 S.Ct. 407, 416–417, 9 L.Ed.2d 441, 445. There was a lapse of forty-eight hours between the time of his arrest and the time that his statement was taken. In addition, he had consulted with an attorney prior to having given his statement.

Defendant-Hernandez was arrested sometime in the afternoon on April 14, 1975. He was questioned around 6:00 that evening, after having been fully advised of his constitutional rights, including the right to consult with an attorney prior to the questioning. He was confronted with his participation in the murders, at which time he indicated that he wanted to talk. According to the officers present at the time, he never asked to see an attorney or to make a phone call. He gave an oral statement for approximately twenty minutes, then signed a waiver form and a written statement. On appeal he contends that he was improperly advised of his rights and that his statement was induced by promises of leniency.

Defendant-Serwatka was arrested on April 14, 1975, at approximately 1:00 p. m. He was advised of his rights, booked and placed in a holding tank for the night. The next morning Serwatka was taken to the detective bureau where he was confronted with the fact that two of his co-defendants had already given statements. The defendant requested and was allowed to speak with the co-defendants, after which he agreed to tell the police everything. He was again advised of his rights and began his statement at 9:30 a. m. and ended it at 2:30 p. m. One of the officers who was present during the questioning testified that Serwatka read the waiver, said that he understood it and signed it prior to making his statement. He also testified that none of the defendants' requests were denied and that no promises or threats were made in order to induce the confession.

On appeal Serwatka contends that his confession was not voluntarily made because he had been improperly advised of his rights, and was not taken before a magistrate within six hours of his arrest as required by statute and because his statement had been induced.

Many of the grounds upon which the defendants predicate error are unavailable to them on appeal. In certain instances the grounds for objection differed at the hearing and on appeal. *Jones v. State* (1973) 260 Ind. 463, 296 N.E.2d 407. Other grounds which were raised at the hearing were not argued in their briefs. Appellate Rule 8.3(A)(7). For the sake of brevity, the grounds which were preserved will be consolidated wherever possible.

In determining whether a confession has voluntarily been made, this Court will look to all of the surrounding circumstances so as to determine whether there had been any inducement in the form of violence, threats, promises or other improper influence. *Nacoff v. State* (1971) 256 Ind. 97, 267 N.E.2d 165; *Montes v. State* (1975) 263 Ind. 390, 332 N.E.2d 786. The burden of proof rests with the State to show beyond a reasonable doubt that the statement was voluntarily made. *Magley v. State* (1975) 263 Ind. 618, 335 N.E.2d 811. On review we will not disturb the trial court's ruling on the issue of voluntariness as long as there is sufficient evidence to support it. We will consider only that evidence which supports the trial court's determination where the evidence is in conflict, along with any uncontested evidence presented by the defendant. *Magley v. State, supra.*

Each of the defendants raises as error certain questions of fact upon which con-

flicting testimony was introduced. Gutierrez alleges that the police continued to question him after being advised that his attorney told him to remain silent, and that the waiver form was never explained to him. McCall alleges that he was beaten and coerced into signing the statement by promises of protection for his family. Hernandez and Serwatka allege as well, that they were induced into giving their statements by promises of leniency and by police mistreatment. In each instance however, police testimony was introduced which directly contradicted the defendants' claims. As was stated above, in such a situation it is up to the trial judge to make a determination based upon the facts presented.

■ Defendants Gutierrez, Hernandez and Serwatka also contend that they were improperly advised of their rights in that they were told by the police that an attorney would be appointed for them at a later time if they could not afford one, but were not advised of their right to have an attorney present during questioning. Although such wording in certain instances may constitute a faulty advisement, *Goodloe v. State*, (1969) 253 Ind. 270, 252 N.E.2d 788, such is not the outcome in the case at bar. Gutierrez talked to an attorney on two occasions before signing his statement. One of the officers present at the time that Hernandez was questioned testified that Hernandez was informed of his right to have an attorney present before and during questioning. Serwatka was informed at the time of his arrest that "he had the right to an Attorney, that if he could not afford an attorney one would be appointed for him. And that if he desired to talk to us that he could cease talking at any time." Moreover, each of the defendants signed the following waiver form after having read it and signified to the officers present that they understood it:

"The person to whom I give the following voluntary statement, _____, having identified and made himself known as a _____ of the _____ Police Department, DULY WARNED AND ADVISED ME, AND I KNOW:

"1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say, may or will be used against me in a court of law.

"2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

"3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

"4. That in the course of any conversation, I can refuse to answer any further questions, and remain silent, thereby terminating the conversation.

"5. That if I cannot hire an attorney, one will be provided for me."

The above wording fully informed the defendants of their rights with regard to the presence of an attorney at the time of questioning. *Niehaus v. State*, (1977) Ind., 359 N.E.2d 513; *Emler v. State*, (1972) 259 Ind. 241, 286 N.E.2d 408.

■ Gutierrez and Serwatka further argue that their confessions were inadmissible because they had been given more than six hours after their arrest, and prior to their having been taken before a magistrate. Ind.Code § 35–5–5–3 (Burns 1975). Under the statute, however, delay is just one of many factors to be considered in determining the admissibility of a confession. As was stated by this Court in *Nacoff v. State*, (1971) 256 Ind. 97, 101, 267 N.E.2d 165, 167, "The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influence."

■ Viewing the circumstances surrounding the taking of each of the defendants' statements in such a light, it appears that each was given voluntarily, after an intelligent and knowing waiver of rights. Although the delay involved in the case of

Gutierrez and Serwatka is a factor which must be weighed negatively, as is the manner in which the polygraph results were transmitted to Gutierrez, *Montes v. State, supra,* nevertheless, they are just two of many factors to be considered. Each of the defendants was orally advised of his rights on several occasions. They were given waiver forms which explicitly set out their right to have an attorney present before and during questioning, as well as their right to cease talking at any time, should they wish to make statements. These waivers were read by, and in many instances to, the defendants, after which each defendant indicated that he understood the waiver and signed it. In the case of Gutierrez and McCall, both requested and spoke to attorneys before giving their statements. Defendants Hernandez and Serwatka made no such requests. Any allegations of inducement in the form of threats, promises or mistreatment were directly refuted by police testimony.

We find that the trial court's denials of the defendants' motions to suppress were based upon sufficient evidence.

### ISSUE II

■ The defendants next contend that the trial court erred in failing to delete effectively all references to one another in each of the confessions introduced into evidence. In the alternative, they argue that the court should have granted their motions for severance and ordered separate trials. The confessions were read to the jury in a redacted form, with all names but the confessor's deleted. The defendants argue that the procedure used denied each of them the right to confront and cross-examine the witnesses against them, since none of them testified at trial.

In support of their argument, the defendants cite Ind.Code § 35–3.1–1–11 (Burns 1975) which provides:

"(b) Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect one of the following courses:

"(1) a joint trial at which the statement is not admitted into evidence;

"(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

"(3) granting the moving defendant a separate trial."

Additionally, the defendants cite *Sims v. State,* (1976) Ind., 358 N.E.2d 746 for the proposition that the deletion of a name or the substitution of the letter X can not act as an effective deletion as required by the statute, since a jury will naturally tend to associate the declarant's co-defendants with the blanks in the edited version. We agree with the defendants that the deletions made were not effective within the meaning of the statute. As stated in *Carter v. State,* (1977) Ind., 361 N.E.2d 145, 148:

" * * * we cannot permit references by logical inference that could not be made directly. Because of the context in which the out-of-court statements are to be used, i. e. in a trial of two or more defendants wherein all are charged with the same offense, it will require more than a fig leaf to shield the non-declarants from the declarations of a declaring co-defendant. In consequence, there probably will be but few such statements that are susceptible to effective deletion within the meaning of the statute. Where such effective deletion is not clearly possible, due regard being had for the context in which the statement will be used and the normal inclination of a jury to associate a declarant's co-defendants with pronouns or blanks or other vagaries in the edited version, the state must be left to choose between separate trials or foregoing the use of the coveted statement."

In *Carter* the redacted statements of two defendants were admitted into evidence

over their objection that their Sixth Amendment confrontation rights were being violated. There, the admission was held to constitute harmless error based on the following:

"* * * There was no consequential difference in the statements given by Carter and by Laws; and neither of these defendants was charged in Hunter's statement with any act not fully confessed by his own statement. No rebuttal was offered by either Carter or Laws. Thus, we have, as the sole evidence in the case, the confessions of the defendants, admissible as to the declarants, corroborating testimony of eyewitnesses and the inadmissible hearsay which was only corroborative of the properly admitted and undisputed evidence."

It has been urged that *Rogers v. State*, (1978) Ind., 375 N.E.2d 1089 should apply, because here, as in *Rogers*, there were more than two participants in the events related in the redacted statements and numerous blanks inserted in lieu of various names. The writer of this opinion dissented in the *Rogers* case, saying:

"To me, the potential for harm is increased, rather than decreased, by the vagary as to whose name might have been deleted. The jury, nevertheless, is most likely to infer that it was a co-defendant. Thus, each blank subjects each co-defendant to an inference of involvement, and the potential for harm increased proportionately as the number of blanks and the number of co-defendants increase." 375 N.E.2d at 1092–1093.

Neither *Rogers v. State, supra*, its progeny, nor *Carter v. State, supra*, should be interpreted to render redaction, by substitution of a blank for a name, either appropriate or inappropriate, solely upon the basis of the number of participants in the events related or upon the number of defendants being tried jointly or sought to be tried jointly. Rather, the test is whether or not the proposed redaction is effective to shield a defendant from taint from the out-of-court declarations of a non-testifying defendant. If, notwithstanding the proposed redaction, a reasonable inference could be drawn that the blank or "x" refers to a co-defendant as an implicated party, it is not effective. If such inference could not reasonably be drawn, then it is effective. It follows that there will be but few instances where that type redaction will satisfy the requirements of the *Bruton* policy, because a blank or "x" that, by reasonable inference, refers to one of the co-defendants cannot be said to be permissible merely because it does not reveal which one. Conversely if the persons identified as participants by the out-of-court declaration were not co-defendants, there would be no need to attempt concealment of their identities in the first instance.

The case before us falls into the first category. The confessions of each defendant referred to himself and several others as collaborators in the crime charged. In the redacted statements, numerous blanks were inserted in lieu of the names of the declarant's collaborators. Although no co-defendant could be identified by any particular blank, in context it was reasonable to infer that one or more of the blanks referred to one or more of the co-defendants. The redactions, therefore, simply could not operate as an effective shield from the taint of incriminatory statements not susceptible of cross-examination.

However, the circumstances which were present in *Carter* and rendered the error there harmless, are quite similar in the case before us. The details of each of the defendants' confessions are substantially the same. None of the defendants is charged in any of the confessions with any act to which he had not also confessed by his own statement. Although much of the evidence against the defendants was testimony of unsavory characters whose credibility was subject to severe scrutiny, as to each defendant, in addition to his written confession, there was evidence from his own witness that he had acknowledged his guilt.

Helen Serwatka, mother of the defendant John Serwatka, testifying upon his behalf, said that upon learning of John's arrest, she and her husband went to the jail to see him.

"Q. What did he say to you and what did you say to him with respect to his state of mind?

\*     \*     \*     \*     \*     \*

"A. I said to John what is this all about, and he said mother I did what I did because I had to. Taggart showed me a picture of dad coming out of the ice machine, and you in the yard feeding the dogs. And he said if you don't do what you're supposed to I'm going to have you and your parents killed."

Margaret Gutierrez, mother of the defendant Sam Gutierrez, testifying upon his behalf talked to him in the jail on April 16, 1975, for the first time following his arrest on April 14th.

"Q. Mrs. Gutierrez, what was the conversation at that time between Sam and yourself, concerning his state of mind?

"A. I asked my son what had happened, and Sam told me that he had been constantly threatened, and Mr. Taggart had threatened to kill him and our family. And he was forced to do what he did.

"Q. Was anything else said at that time?

"A. Yes.

"Q. What else was said?

"A. I asked him what he meant by being threatened, or what he meant by that, and Sammy told me that Mr. Taggart had shown him a file with different pictures of his leaving work, and his father leaving the office of his, the little ones playing outside on the lawn, grandma and grandpa. And that he was constantly threatened and forced into doing what he did, and that if he didn't do what they told him that his family would be messed up."

Amelia Hernandez, mother of the defendant Steve Hernandez, testifying upon his behalf, talked to him in the jail on April 16, 1975, following his arrest on the 14th.

"Q. Mrs. Hernandez, inviting your attention to April 16th of 1975, you were about to relate a conversation you had with your son concerning his state of mind, would you tell the Court and Jury what you said to him and what he said to you at that time.

"A. I walked up to the door, and I had started crying, and when he saw me crying he started crying too. And I asked him how could he be involved in something so terrible, that if it was true. And he said mom, he said I had to go along with them because I was ascared because they might do something to daddy, to Laura or the baby."

Ellen Ackers, the former wife of the defendant, William McCall, testifying upon his behalf said that she visited him in the jail following his arrest.

"Q. When you went to the police station after Bill had been arrested and the police permitted you to talk to him what did he say to you and what did you say to him, what you just told us?

"A. I see. I went in and he was there, and I asked him if he did it and he said he had to, that if he didn't they had threatened to cut me and the kids up in front of him. And the little girl, my baby, all the kids were with me, but the baby went in there with me and he hugged her and he was crying."

In view of the foregoing related testimony and assuming arguendo that it was error for the court to admit the confessions in their redacted form or, alternatively, to deny the motion for separate trials, it is clear that here as in *Carter v. State*, supra, that such error was harmless, beyond a reasonable doubt.

### ISSUE III

At the close of evidence, several instructions were tendered to the trial court by the defendants with regard to the defense of coercion and duress. Defendant-Gutierrez's tendered instruction No. 5 was modified and given as final instruction No. 16. The

other instructions were refused. On appeal the defendants contend that the instruction given was an incorrect statement of the law and thus should not have been given in place of the ones tendered.

■ With regard to the tendered instructions, the trial court did not err in refusing to give them since there was no evidence introduced at trial indicating that the defendants were acting under an instant and imminent threat sufficient to induce a well grounded apprehension of death or great bodily harm, at the time they committed the crimes charged. *Ross v. State*, (1907) 169 Ind. 388, 82 N.E. 781. Where the evidence does not support the giving of an instruction, it is not error to refuse to do so. *Lamb v. State*, (1976) 264 Ind. 563, 348 N.E.2d 1.

■ Concerning the instruction that was given to the trial court, there is no need for us to pass upon its correctness, since there is no indication from the record or the briefs that any objections were raised by any of the defendants at the time that it was given. In addition, the instruction as worded could not have harmed the defendants and quite possibly may have benefitted them, since they were not entitled to any instructions on the issue. A judgment will not be reversed because of technical errors which do not prejudice the substantial rights of the defendant. Ind. Code § 35-1-47-9 (Burns 1975); *Henderson v. State*, (1954) 233 Ind. 598, 122 N.E.2d 340.

### ISSUE IV

During the course of the trial, Officer Highsmith was asked by the State to identify State's Exhibit No. 8. The officer responded by stating, "It's a copy of the statement, it's the statement that was given by William McCall. It's a five page statement, sir." At that point, the defendants each moved the court to declare a mistrial on the grounds that the officer stated that the statement was five pages long whereas the redacted version was only two pages long. On appeal they argue that such a reference left the jury free to speculate to the defendants' disadvantage, as to

what was included within the omitted three pages.

■ The decision to grant or to deny a motion for mistrial lies solely within the trial court's sound discretion. *Cooper v. State*, (1977) Ind., 359 N.E.2d 532; *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229. A defendant predicating error upon the trial court's decision "must demonstrate that the question or remark complained of placed him in a position of grave peril, to which he should not have been subjected." *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312; *Johnson v. State*, (1977) Ind., 359 N.E.2d 525, 529. Here, the discrepancy in the length of the original statement and the redacted version was never pointed out to the jury. They only heard an objection made to the introduction of the statement itself, and not to any mention of its length. As it was read to them instead of by them, it would have been difficult for them to judge its length at that time as well.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., concurs in part, and concurs in result in part, with opinion.

PIVARNIK, Justice, concurring.

I concur fully in this opinion in Issues I, III, and IV. I further concur in the result reached in Issue II. The majority indicates that the admission of the redacted confessions into evidence was harmless error. I believe that, under the circumstances of this case, the admission of these confessions was not error at all. In addition to *Sims v. State*, (1976) Ind., 358 N.E.2d 746 and *Carter v. State*, (1977) Ind., 361 N.E.2d 145, we faced this issue in *Rogers v. State*, (1978) Ind., 375 N.E.2d 1089, *Stone v. State*, (1978) Ind., 377 N.E.2d 1372, and *Williams v. State*, (1978) Ind., 379 N.E.2d 449. From all of these cases, I interpret our position to be that it is only where the circumstances and the relationships of the defendants tend to raise an inference that their statements

point to no one except each other, and this is apparent to all, including the jury, that redaction has no effect as it is clear that the blank in the confession stands for the name of the other defendant. There is no such inference, however, which attaches to *all* redacted statements such that we must assume that whenever a blank is used to replace a name or a number in a confession that there will immediately be an inference drawn by the jury that is the co-defendant's name which was deleted. No such inference was apparent in any of the defendant's statements admitted in this case. In light of the holdings in the above opinions, I do not feel that the trial court committed error. Nor was there a violation of the provisions and intent of Ind. Code 35–3.1–1–11 (Burns 1975), or the holding in *Bruton v. United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476.